CALVIN CLEMENTS v. M. A. ANDERSON et al.

1. SWAMP LAND—CASE CITED.—The case of Jackson & Zollicoffer v. Dilworth, Secretary of State, 39 Miss., cited and declared to be decisive of the invalidity of a patent issued upon a location of scrip issued to a county in the levee district, on land in a county embraced in the act of 16th March, 1852,

entitled "An act for the reclamation of the swamp and overflowed public lands and for the improvement of the navigation of various rivers and streams in this state.

2. NULLUM TEMPUS OCCURRIT REGI. — The doctrine of the common law is that the statute of limitations does not run against the state, but does run against a county, city or town.

3. STATUTE CONSTRUED.—Under the act of 16th March, 1852, above recited by its title, the state retained the title of the fee in the swamp lands embraced in it until the issuance of a patent and until the state parted with title, the statute of limitations did not run in favor of an adverse possession.

4. THE MAXIM NULLUM TEMPUS OCCURRIT REIPUBLICÆ CHANGED BY THE CODE OF 1857.—By the Code of 1857, art. 25, p. 402, the state placed herself on the footing of individuals, as to the bar of the statute of limitations, but no time elapsed before the 1st November, 1857, can be computed against the state.

5. PATENT MAY BE PRONOUNCED VOID BY COURT OF LAW, WHEN. — If a patent appears on its face to be void, a court of law is as competent to pronounce it so as a court of chancery; and if it appears that the title had passed out of the government before the patent was issued, it is void and may be so pronounced by a court of law.

ERROR to the circuit court of Attala county. CUNNING-HAM, J.

*J. A. P. Campbell,* for plaintiff in error.

The errors assigned in this case are the refusal of the circuit court to sustain the motion to exclude from the jury the patent to Green, and the evidence of possession under it, and the refusal of the instructions asked by plaintiff and giving those asked by defendants, and the same questions are involved in the several assignments of error, viz.: 1st. Whether the statute of limitations of ten years barred plaintiff; 2d. Whether the eighth section of "An act further to remedy the evils occasioned by the burning of the court-house of Attala county, approved February 6, 1860," barred plaintiff.

The patent to Joshua Green was dated in 1853. The land was "swamp land" and was located in Attala county, with "Tunica county scrip," and on this location the patent was issued. It was invalid; see Jackson et al. v. Dilworth, Secretary of State, 39 Miss. 772, where this question was decided in a controversy about one of Green's locations in Attala county, of "Tunica county" scrip.

This patent being invalid left the title in the state (or rather in Attala county, to which the swamp land within its limits had been granted by act of 1852), and when the land was located with Attala county swamp land scrip by plaintiff it was properly patented to him.   He read to the jury his patent, and rested his case.   Defendants offered a patent to their vendor prior in date to plaintiff's, but invalid, and not admissible to show title, but as color of title, under which to engraft, on possession, the defense of the statute of limitations.

The possession relied on commenced about January 1, 1855, the title being still in the state (or county of Attala), unaffected by the invalid patent to Green, the statute of limitations did not run against the state (nor county) prior to the operation of the Rev. Code, November 1, 1857.   Until that time *nullum tempus occurrit reipublicæ.*   No former statute of limitations was made to apply to the state, nor to a county.

From the 1st November, 1857, by the Rev. Code, the statute of limitations did run against the state and county. From 1st November, 1857, to August 14, 1869, deducting the time between 31st December, 1862, and 2d April, 1867, when the statute of limitations was suspended, there were but seven years and a half and a few days.   Therefore it is manifest that the ten years' statute did not bar ; for the plaintiff's rights did not accrue until he obtained his patent, and the patent vested in him a title not barred by limitations, as just shown.

The eighth section of the special act for Attala county did not bar plaintiff, because he acquired by the patent to him just what right the state (or county) had, and that act did not apply to the state ; because the state was not specially named, and the rule is well settled, that a disabling statute never will be held to embrace the state unless its language clearly includes the state.   By reference to art. 25, p. 402, Rev. Code, it will be seen that it carefully limits the application to the state or any county, of the limitations pre-

scribed in that chapter of the Rev. Code. It does not provide that all future statutes of limitation shall apply to the state.

. The foregoing disposes of the questions involved in the action of the circuit court on the motion to exclude evidence, and in refusing the instructions asked by plaintiff, and in giving such of the instructions for defendants as conflicted with those asked by plaintiff. If my views above expressed shall be found to be correct, I ask the attention of the court to the second, third and sixth instructions given for defendants, which were clearly wrong, on which the opinion of this court will be needed for the guidance of the circuit court; if the judgment shall be reversed on the grounds above urged.

The second instruction applied the doctrine of maintenance (often improperly called champerty), and the rule that a disseizee cannot convey so as to vest title in his grantee, as against the party in possession, to the state. This was a misapplication.

The third instruction applied to the state an estoppel because of the assumed receipt of the purchase-money, and the failure to refund.

. I am at a loss to conjecture whence the rule invoked was deduced, if the facts were as assumed in the instruction; but it is as difficult to find the facts assumed in the instruction, as the rule invoked. The state did not receive a cent of purchase-money. The scrip was issued to Tunica county, and sold by that county, and not a cent received by the state. The reckless holder of Tunica scrip invaded Attala county and located his Tunica scrip on the land of Attala county, and obtained a patent on it, but he took nothing for his pains, as held in Jackson et al. v. Dilworth, above cited, and the plaintiff having located Attala scrip, on Attala land, obtained a patent and was clothed with the title, and is not to be affected by the mistakes and errors of others.

The sixth instruction announced that the invalid patent to Green could not in this suit be attacked collaterally and

vacated.   Whatever may be the rule in reference to a patent valid on its face, it seems to. me that, where the patent shows by its recitals its invalidity, it may be so pronounced whenever offered as evidence.   This patent was offered to show title in defendant's grantors, but it was insufficient for that purpose, and no reason is perceived why the court could not so pronounce.   In Jackson et al. v. Dilworth, above cited, the court compelled the patent to issue to petitioners, notwithstanding the former issuance of a patent to Green for the same land.   This was treating the former patent as invalid, in a proceeding to which Green was not a party, in a manner quite as "collateral" as in the case at bar.

It is well settled that the question of the validity or invalidity of a patent may be examined as well at law as in equity, and the patent, when invalid, avoided in ejectment. Hit-tuk-ho-mi v. Watts, 7 Smedes & Marsh. 366 ; Wray v. Doe, 10 ib. 462 ; Dixon v. Doe, 23 Miss. 84 ; Doe v. Winn, 11 Wheat. 380 ; Polk's Lessee v. Wendell, 9 Cranch, 87 ; Polk's Lessee v. Wendell, 5 Wheat. 293 ; Stoddard et al. v. Chambers, 2 How. (U. S.) 284.   It is also well settled that a legislative grant vests title in the grantee as effectually as any other mode.

The swamp lands lying in the county of Attala were granted to that county by act of 16th March, 1852, and thereby the title of that land vested in Attala county.   See section 1 of the act of March 16, 1852, and the case of Jackson et al. v. Dilworth, 39 Miss. 772, above cited, in which this effect of the grant is distinctly affirmed.   And the act of the secretary of state in patenting land in the county of Attala to the holder of Tunica scrip was illegal and void, and the patent was inoperative ; and this being apparent on the face of the patent, it is necessarily examinable at law, as held by the authorities cited above.

The claim that the location and patent of Green may have been validated by subsequent ratification, as stated in Jackson et al. v. Dilworth, quoted above, does not furnish a reason for holding the patent not to be examinable at law.

Because, clearly it was *prima facie* invalid, and, if a state of facts exists which cured the invalidity, it was incumbent on him who claims the benefit of the cure to show it. But no such thing appears (nor exists) and the case must be decided on the relative value of two patents to the same land, the elder of which, by its recitals, shows its invalidity, and the other being regular and legal. The patent to Green was inoperative and conferred no title, because the land had been before granted to the county of Attala, which, thereby, acquired a vested right.

The secretary of the state could not legally issue a patent for land in Attala county, except upon a location of Attala county scrip. Jackson et al. v. Dilworth. It was competent for the court, with all the facts before it, to apply the law and give effect to that patent, which was according to law and conferred title.

If the question of time be raised against the location of scrip by plaintiff in error, it is easily answered. In the first place it is observable that in Jackson et al. v. Dilworth, above cited, it appears that the location of Attala scrip was made the 20th of April, 1857, and no objection was found on that score.

It is true the act of 16th March, 1852, adopts fifteenth section of act 15th March, 1852, which limited the time of location to 1st October, 1853; but the act of 21st October, 1852 (special session acts of October, 1852, p. 82, § 2, chap. 52), extended the time to 1st April, 1854, and before that time expired the act of 2d March, 1854, was passed (session acts 1854, p. 77), the sixteenth section of which abrogates all restriction as to time of location, and hence, the objection on the score of time cannot avail.

Plaintiff in error, being a purchaser of Attala scrip under Jackson & Zollicoffer, acquired their rights, which were held good on a parcel of this very Attala scrip against Green's location in the case above cited, as reported in 39 Miss. 772.

The fact is, that the *mandamus* was sought in that case on

forty acres of the Attala scrip, as a test case, to try the validity of Green's entry, and it will be a strange result if in that case Green's patent was invalid as against holders of Attala scrip, and in this shall be held good against some of the very same scrip. No such inconsistency will characterize the action of this court, I am very sure.

It is matter of legislative history that the original "Attala county scrip" of Jackson & Zollicoffer was destroyed during the war; but new scrip was issued to supply its place, in pursuance of an act of the legislature of the state, approved February 14, 1867 (session acts of 1867, p. 631), and it was placed on the footing of the original scrip, and no distinction can exist between the rights of the parties arising from the location of the original, or the legally substituted scrip, for such is the express provision of the act just cited.

*Shelton & Shelton*, for defendants in error.

Upon a comparison of the muniments of title, defendants held it unless for some fatal defect on the face of Green's patent, it was wholly void, for there was no evidence tending otherwise to impeach it.

On the motion of plaintiff to exclude defendant's evidence, and, also, in the first instruction asked by plaintiff, the court was urged to decide that Green's patent was void and conveyed no title, but neither shows on what ground its invalidity was urged; for that ground we are left to conjecture. The record should show what was the objection decided by the court below; if it be otherwise, this court may be called on to decide objections never urged in the court below. 39 Miss. 385; 38 ib. 103; 37 ib. 501; 31 ib. 603.

We can see no objection to Green's patent that would not apply equally to both, except that Green's was granted on a location of scrip issued to Tunica county, but plaintiff's on scrip issued to Attala county, and that, doubtless, is the point of objection to Green's patent.

We contend that at the date of Green's patent in February,

1853, scrip issued to Tunica county could be located upon overflowed lands in Attala or any other county in the state, and *vice versa*, except as to those embraced in the Leaf river district, as created by act of 1852, chapter 45, and those in the Pearl river district south of Hinds, as created by act of 1852, chapter 34. We, therefore, not only claim that Green's was a legal location under the acts of 1852, not only that its legality was recognized as valid by the act of 1854, but I further claim that, even if not valid in law before the act of 1854, yet that act ratified it and gave it validity, and thereby made Green's title perfect, at least from that date, even on the hypothesis that his location, at the time it was made, was unauthorized. Certainly, on the 2d March, 1854, there existed no cause why the state could not, by ratification, make Green's title valid even if it was invalid before. I might show that holders of Attala county scrip, before location, had no vested rights in the lands located by Green, but the position is unnecessary. An argument, applicable specially to this case, is all that is necessary.

The scrip located by plaintiff, according to his own proof, was issued, indorsed by the secretary of state, delivered to the county and assigned to plaintiff under the sixteenth section of the act of 1854, and, therefore, after Green's title was recognized and ratified by that act; for plaintiff's patent recites that "Calvin Clements having become the holder of Attala county land warrants, Nos. 2 and 6, regularly indorsed by the commissioners of said county, and by the secretary of state, in pursuance of the sixteenth section of the act, approved March 2, 1854, and he having located said warrants on the land, etc. Plaintiff is bound by these recitals in his own patent.

Now, said section 16 (1854, p. 82) enacts that the secretary of state is required to issue to the commissioners of swamp lands in the interior counties, from time to time, scrip in such quantities as the commissioners may elect, in which scrip the secretary shall indicate the county to which issued; which scrip he shall indorse thus: "Good for any unappro-

priated swamp lands in the county to which the same issued."
The twelfth section, p. 81, requires the "compensation
scrip" to be thereafter issued to the interior counties to be
so indorsed by the secretary of state.   There is no provision
that scrip previously issued (if indeed any had been issued
to the interior counties) shall be so indorsed by the secre-
tary.   Therefore the scrip located by Clements was issued
and indorsed by the secretary in pursuance of the sixteenth
section of the act of 1854, and therefore after its date.
Therefore, on the face of plaintiff's patent it is apparent
that at the time the act of 1854 was passed, that is, at the
time Green's location and patent were recognized and rati-
fied by that act, plaintiff's warrants, Nos. 2 and 16, were
not only not held by plaintiff but had never been issued,
and, therefore, as to those warrants, there was no inter-
ference with vested rights by the legislative ratification of
Green's location and patent contained in third act of 1854.
It is apparent that by that ratification Green's title was
made perfect before plaintiff's warrants were ever made in
pursuance of said act of 1854, and that this is true even if
Green's location was not originally valid.

We can demonstrate the same thing from the statutes. The
neuclus act of 1852 (chap. 16) expressly provides that the
scrip issued under that act shall be located before October
1st, 1853.  P. 46 and 47, §§ 13 and 15.  The supplemental act
(chap. 15) extends the provisions of those sections to scrip
issued to interior counties.  P. 34, § 4.   The act of October
21, 1852, enacts that so much of said acts as required the
scrip thereby authorized to be issued to be located by
October 1, 1853, be so amended as to read 1st April, 1854
(p. 82, § 2), and makes special provision for their location
up to that date, but no longer, and makes no provision for
issuing any more scrip.  Sec. 3.   Thus, of the scrip issued
before the act of 1854, none was in existence, or, if in ex-
istence, it could not be located after 1st April, 1854.   But on
the 2d March, 1854, the act was passed directing scrip to
be issued under that act, requiring it to be indorsed as afore-

said under said sixteenth section of that act, and creating no limit to the time of its location. It follows, therefore, that claimant's scrip, located in 1869, was issued, indorsed and located under the act of 1854 ; that is, after Green's title had been ratified by that act, and compensation therefor given to Attala county.

If the foregoing principles be correct, it is useless to go farther in the investigation, for those principles give defendants the title, and, for the purposes of this suit, we care not whether by Green's original patent, or by the legislative ratification contained in the act of 1854 ; either is fatal to the plaintiff's title and defeats his action, and upon them the judgment must be affirmed.

We proceed to another position. The title claimed by plaintiff in this case is wholly dependent on his ability, in this suit, to annul the effect of Green's patent. Can that be done in this suit, even on plaintiff's hypothesis that the location was not authorized by the statutes of 1852 ? I contend that it cannot. In locating the Tunica county scrip there were but two parties interested, Green and the state. At that time plaintiff had no interest, directly or indirectly ; even his Attala scrip was subsequently acquired. Unless, therefore, Green's patent is, for some reason, apparent on its face, not only voidable by the state, but totally void as against the state and every other person whatever, its effect cannot be collaterally annulled in this suit, but its validity can only be attacked at the state's option, and by some direct proceeding to have it set aside. That this is abstract law, I need not further argue than to cite authorities. 12 Johns. 77 ; 19 How. 332 ; 2 Pet. 201 ; 3 Wash. on Real Prop. 530 ; 10 Johns. 23 ; 23 Miss. 85 ; 12 Smedes & Marsh. 659 ; 37 Miss. 516.

Upon the foregoing principle, the only question that can be raised in this case is, whether the location of Tunica warrants on Attala bonds renders the patent voidable only by the state, and upon a direct proceeding against it, or is the patent thereby rendered so totally void as that every

person and the courts may treat it as a nullity It is not a question whether the governor and secretary were officers authorized to issue Green's patent, under the state's seal. If that want of power in those officers had existed, the patent would be wholly void. It was made when objection was made to General Ames' authority to issue plaintiff's patent. It is not a question whether the title was in the state at the time Green's patent was issued. If that had previously been divested, the patent would operate on nothing, and, therefore, be of no effect. It is not a question between conflicting claims, existing at the time Green's patent was issued. If that were so, those claims were not impaired by the patent, and could be enforced in law or in equity, notwithstanding the patent; but the true question is, whether state officers, clothed with the legal duty and authority to grant patents to these bonds, have, in the exercise of that duty, exceeded the terms prescribed by the state, a question, if even adverse to Green's patent, depends on a very doubtful construction of their duty and authority, as prescribed by the statutes.

Who, upon a doubtful construction of the terms prescribed, has the right to raise that question? Can any and every person, though holding no adverse claim at the time the duty was performed, raise it in any collateral proceeding? The simplest principles of agency test this question. If we give to another the power to act for me, the terms of which power are doubtful on its face, and my agent construing them in good faith executes the power according to his construction, and we do not disclaim his action, but receive and reclaim the consideration accepted by him. If, after having received it, we, by a direct act, recognize, confirm or ratify the act, certainly no third party and no court could, in a collateral proceeding, hold the act as a nullity.

Now, that is precisely the case. The patent to Green was made by the governor and secretary, the recognized agents of the state for locating these lands and issuing patents therefor. The state has received and returned the consider-

ation received by those agents, and without any act repudiating or disclaiming their act in the premises. The state has directly ratified the location and Green's patent by the act of 1854.

The fallacy of the adverse position may be shown in another way.

If that position be correct, Green will lose every acre of the land patented to him and for which the state has received full value from him; either, therefore, the state must repay the money to Green, or she must, by refusing repayment, defraud him of his warrants.

It may be that the state and her advisers desire to do neither the one nor the other, have no purpose to defraud Green, and do not desire to cancel the patent and repay the money to Green, and therefore elects to recognize and confirm his patent; certainly she could do it and has done it. But the adverse position is, that a person who had no interest in the transaction at the time it was made can, in a collateral proceeding, treat the patent as a nullity, and thereby force the state into such a position against her own interest.

The foregoing results prove that, even on plaintiff's own construction of the acts, Green's patent cannot be regarded as a nullity, but as voidable only at the option of the state; that, therefore, it cannot be collaterally attacked in this suit.

A patent is a title from its date, and conclusive against all whose rights did not commence before its emanation, and if the proceedings on which the patent issued were irregular, the government, but no one not having a prior equity, can take advantage of it. 7 Wheat. 212; 9 Cranch, 281; 6 Pet. 342, 343; 18 How. (U. S.) 87; 15 Pet. 93; 5 Wheat. 304, 307; 19 How. (U. S.) 332.

If the foregoing principles be correct, then my position is true, that even on plaintiff's construction of the acts, Green's patent cannot in this suit be treated as a nullity, and therefore the judgment is right. But, perhaps, it may be answered that the issuing of the patent to plaintiff is the state's

annulling Green's patent.  That idea was equally applicable in each of the cases before cited, and yet did not change the result.  Those cases are therefore directly adverse to the idea, but the reasons against this position are palpable.  Plaintiff's patent was made by agents of the state, holding no higher or other authority than the agents, who, under the seal of the state, made Green's patent.  Each was made by a Governor and secretary.  Governor Ames and his secretary had no higher authority, in reference to these lands, in 1869, than Governor Foote and his secretary had in 1853.  The former had no power to cancel the official acts of the latter, unless, therefore, the act of Governor Foote and his secretary was wholly void, and Green's patent a nullity, Governor Ames had no power to annul it.  If it was only voidable at the option of the state, he could not disregard it, until the state had, by proper steps, vacated it.  It was one agent, without instruction or authority from his principal, and of his own volition, attempting to repudiate the act of his predecessor, done seventeen years before, acquiesced in and recognized by the principal during the whole term, and that, too, where possession had been taken and retained under Green's patent, for about sixteen years, without an adverse act on the part of the state.  It comes back directly to the question we have been arguing, if Green's patent (confirmed by the act of 1854) was void, and a nullity, then General Ames could so treat it and issue another; if only voidable by the state, and at her option he could not, but as governor, he could have instituted direct proceedings to test the validity of Green's patent; in which proceeding the state would have to repay to Green the equivalent of the warrants located by Green.  10 Johns. 23; 14 Cal. 365; 19 How. 332.

If either of the foregoing positions be correct, it decrees this case in Green's favor; if both are wrong, then a question arises on the statute of limitations.

By the act of 1854, p. 134, ten years is made the limitation, the proof is that defendants have had continuous and

notorious possession since January, 1855, under a deed from Green.    The suit was brought August 14, 1869. Deduct the time of suspension during the war (from December, 1862, to April, '67, 40 Miss. 611) and there remains ten and a half years.    It is insisted by plaintiff that the limitation did not run until November, 1857.    Code, 402, art. 25. That would be true if we did not hold possession from the state, whereas the plaintiff claims in opposition to possession given us by the state more than ten years since, we are not, therefore, pleading it against the state, but against one who claims adversely to the possession conferred on Green and defendant by the state.

Now the only *scintilla juris* which the plaintiff can claim as existing at the time our patent issued is the county's right to locate her scrip on this or other lands in Attala county.    The statute of limitations runs as much against a county as against an individual.    It was only the sovereign that has the prerogative of *nullum tempus*, etc.    Ang. on Lim., § 38, 5 Ohio N. S. 594 ; 4 Dev. (N. C.) 568, 13 Ohio, N. S. 42.    Now, it is not only true that the limitation will run in a case like this, but it is also true that if it were a proceeding by *mandamus* on the relation of plaintiff for the purpose of thereby asserting his own rights, the limitation would equally bar that, notwithstanding it was in the name of the state.    33 Miss. 115.    That would not be true if the *mandamus* or other remedy were brought by the state for the assertion of her own rights.

There is another statute of limitation which controls this case.    On the 6th of February, 1860 (and it took effect from its passage) it was enacted that possession and use as a farm from 1858, and for five years from the date of the act, confers absolute title to land in Attala county.

That limitation had expired before this suit was brought. That act certainly bars the plaintiff and Attala county.    44 Miss. 609.    Unless, therefore, the plaintiff can be protected by the state's supposed right until the issuance of the patent to plaintiff, this action must be barred.    I have

already shown that this is no contest between defendants and the state, and that no such conflict had ever existed, and for that reason plaintiff is entitled to no protection against said statute of limitations.    But if it were otherwise the foregoing act would, as I contend, bar the state.

The Code of 1857, p. 402, art. 25, makes the limitations thereon prescribed apply to the state in the same manner as to actions brought by citizens.    As to land, ten years is the limitation therein prescribed.    The act of 1860 as to lands in Attala county which come within the terms of said act reduces the limitation to five years, and by its terms makes the title "absolute" and excludes all savings by reason of disabilities.

The aforesaid article 25 is no repeal of a statutory exception in favor of the state, it is the abolition of the prerogative, *nullum tempus*, etc., a prerogative not created by statute but a common-law prerogative.    When therefore the act of 1860 makes the title "absolute" its effect is to be determined without reference to the abolished prerogative, just as if the aforesaid prerogative of *nullum tempus*, etc., had never existed.

But it may be said that said article 25 makes only the limitations contained in the Code applicable as against the state, and that therefore as to the subsequent act the prerogative is not abolished.    Now we take it, that an amendment of an act has, after its passage, the same effect as if it were part of the original act; that a limitation on the effect of an act has the same effect after its passage as if it were part of the original act; that the original and supplementary act are to be construed as if they were one act.

If these principles be correct the act of 1860 becomes a law subject to the abrogation of the prerogative contained in article 25, just as much as if said eighth section of the act of 1860 had been embodied in the fifty-seventh chapter of the Code.    41 Miss. 737.    If any one of the foregoing principles be correct, it proves the correctness of the judgment in this case, and renders it unnecessary to examine the

actions of the court in greater detail, for, even if it be true that the court did err in some of its charges (which I deny), the court will not reverse where the result is shown by the record to be according to the law of the case, there being no doubt or controversy on the facts.    38 Miss. 329.

SIMRALL, J. :

The land in dispute is parcel of the five hundred thousand acres, granted to this state, by the act of congress of September, 1850, for purposes of internal improvement.    The respective parties claim under conflicting patents ; one issued to Joshua Green, in 1853, and the other to Calvin Clements, in 1869.

The patent to Clements was issued under the act of 16th March, 1862, by which, among other things, the secretary of state was authorized to issue scrip for swamp lands in the different counties in which they lie to commissioners appointed for that purpose.    Clements became regularly the holder of a piece of the scrip, which was located upon the quarter section sued for, and in redemption of which his patent was granted.

The patent to Green was issued under the statute of 15th March, 1852, which directed the secretary of state to issue on and before the third Monday in July of that year, to the presidents of the boards of police of the counties of De Soto, Tunica, Coahoma, Bolivar, Washington, and Issaquena, six hundred thousand acres of land scrip.    Joshua Green became the owner of "Tunica County Scrip," which was located on the same land, for which a patent issued to him.

The laws of the 15th and 16th of March, 1852, under which these grants were made, were construed in the case of Jackson v. Dilworth, 37 Miss. 773.    The act of the 15th of March, under which Green made his location, was held to confine the purchasers of the scrip to a location upon lands in the counties therein designated.    In effect the act granted six hundred thousand acres, in the counties bordering on the Mississippi river, for the purpose of

constructing a levee; the scrip for which in appropriate subdivisions should be sold, and located by the purchaser, or his assigns, upon lands granted to the counties. It was further held, that the act of the 16th of March appropriated the swamp lands embraced in the district therein described, and which included the county of Attala, to the respective counties in which the lands are situated ; that thereby the counties acquired a vested right which could not be withdrawn, without their consent ; and that, although such consent might be given, it could not impair the right of the holder of scrip previously purchased. It followed, therefore, from these premises, and was so announced, that the holder of scrip, issued by one of the counties in the Creek district, had no warrant to locate in a county included in the district, as defined in the act of 16th March, and that, although such location might be approved by the secretary of state, and consummated by a patent, the patent was illegal and invalid, and conferred no title ; but that the land was still open to be taken up.by scrip issued by the authorities of the county in which the land was situated.

But it is insisted, for the defendants, that, although their title may have been invalid in its inception in Green, their vendor, yet, entering under their deed from him, their possession was under color of right, and they are therefore entitled to the bar, tolling the plaintiff's right of entry. The maxim of the common law, "*nullum tempus occurrit regi,*" has been incorporated into our jurisprudence.   In England, when an act of parliament is made for the advancement of justice, to prevent injury and injustice, the king shall be bound, though not specifically named therein.   But where the statute is general, and any prerogative right, title or interest is taken from the king, then he shall not be bound, unless by express words the statute is made to include him. Bacon's Abr., 559, Prerogative.   The old authors say that the king shall not be a sufferer by the negligence, the contracts, or the combinations of his officers.   Therefore, he is

not concluded by any statute of limitations, unless expressly by words it is made to extend to him. The king is the personification of sovereign power. In analogy to the reason and policy of the principle, it should be extended in America to those organisms of government which have the attributes of sovereignty, as the United States and the several states, and not to those local bodies, such as cities and counties, which are derivatives and emanations from the sovereign, created for the purposes of local convenience, subject at all times to be changed and modified at the pleasure of the government. In Armstrong v. Dalton, 4 Dev. (N. C.) 569, it was declared that the principle had no application to a county, or to officers who sue on its behalf. So, also, in county of St. Charles v. Powell, 22 Mo. 525, and Callaway County v. Nolly, 31 ib. 397. In Lessees of Cincinnati v. Presbyterian Church, 3 Ohio, 309, it was held that the city of Cincinnati, a municipal corporation, was not embraced. Kemp v. Commonwealth, 1 H. & M. 84; Johnston v. Irwin, 3 S. & R. 291; Allston v. Saunders, 1 Bay, 30; United States v. Kirkpatrick, 9 Wheat. 735, confine the doctrine to the state or the government.

This presents the question, whether the lands, of which the tract in controversy is parcel, were the property in fee of the county of Attala, by grant from the state, or whether the state was the proprietor. To determine that question, the entire legislation on the subject, its policy and reason, as well as the text must be looked to. It is familiar learning that general words, in a statute, may be limited by other restrictive ones, or by other provisions making it impossible or inconsistent to give to the general words their ordinary signification. The entire statute must be so read, as that the whole may have a harmonious and consistent operation.

The title of the act under which the plaintiff derived his patent is declaratory of its policy, "The reclamation of the swamps and overflowed lands, and for the improvement of the navigation of the various rivers and streams of

this state." We should expect to find in the provisions of the law, the development of a plan for that object. The general idea is put forth in the first section, by devoting the lands east of the base of the hills bordering the bottoms of the Yazoo and Tallahatchie rivers (embraced in the grant by congress by act of 28th Sept. 1850), to reclamation from overflow, and to the improvement of the navigation of the rivers, and for that purpose are granted to the counties respectively — granted on the terms thereinafter mentioned; granted in such wise as to make them available for the object indicated. This is the mode of it: The secretary of state was, by the fourth section, to issue scrip for sections and its subdivisions to commissioners, who should sell the same; the purchaser or his assigns could locate this scrip upon any of the designated lands, indorsing the selection made upon the back of the scrip, and, upon a presentment of the scrip, thus indorsed to the secretary of state, who was directed forthwith to issue a patent.

It is manifest from this brief synopsis of the statute, that the general words in the first section did not impart a grant of the fee to the several counties. The title was retained by the state. The commissioners appointed by the county authorities, under the second section, were the agents to make sale of the scrip, to receive the money, and, upon producing evidence of a purchase and location to the secretary of state, the patent emanated, which divested the state of the title. The grant then to the counties was not the land itself but the money arising from the sales, to be expended by them in the reclamation of submerged lands, and the improvement of the navigation of the streams.

As the statutes of limitation do not run against the state, adverse possession, however open and notorious the occupancy, confers no benefit either to toll the right of entry or confer a title. A notable instance is presented in Jackson v. Vail, 7 Wend. 125. In 1820 a patent was granted by the legislature of New York to a revolutionary officer, to take effect as if it had issued in 1790. A possession under claim

of title for thirty-five years could not be set up to bar the title of the heirs of the patentee. No time, under the plea of the statute of limitations, prior to 1820, when the state divested herself of the title, could be estimated under the plea, for it was only from the date of the grant that the statute began to run. So, also, in Wilson v. Hudson, 8 Yerg. 398; Thomas v. Hatch, 3 Sumn. 170; Jordan v. Barrett, 4 How. (U. S.) 169; Chiles v. Calk, 4 Bibb. (Ky.) 544. The fundamental idea, underlying the titles to lands in the United States is, that the state, if one of the "old thirteen," is seized of all the lands within her limits not granted, and as to the new states and territories, the seizin is in the United States to the like extent. The principle in all its force applies to the grant made to this state by the act of 28th September, 1850, as to which she could not be disseized, unless, by express statute, the state chose to renounce her prerogative, and consented to put herself on the same footing as individuals in respect to the statute of limitations. This was done by the 25th art. of the Code of 1857, p. 402; prior to that enactment, *nullum tempus occurrit republicæ.*

It follows, therefore, that the occupancy of the *locus in quo* by the defendants, from 1855 to November, 1857, does not avail them under their plea. Computing from the latter period to the date of instituting this suit, and deducting the suspension during the war, the law did not attach.

But it is said that Green's patent, being on its face older than Clement's, must prevail in a court of law, until set aside by direct proceedings in chancery, or upon *quo warranto.* If the patent may be vitiated for matter *de hors*, to be averred and proved, chancery is the proper forum for the litigation. But if that appears on its face which makes it invalid and inoperative, then the fact is as if "found," and it is a question of law as to its validity. If the patent is "void" and that which renders it so is written on its face, it is quite as competent for a court of law as for a court of equity so to pronounce, as if the land

for which it was issued had already been appropriated. As where the title passed by grant contained in terms in an act of congress, and a patent was issued to part of it by the ministerial officers of the government, under the general law for the sale and disposition of public lands. Grignon's Lessee v. Astor, 2 How. (U. S.) 344; Stoddard v. Chambers, ib. 317; Indian v. Watts, 7 Smedes & Marsh. 365. It is quite well settled by authority that, if the government had no title, or its officers had no authority to issue the grant, the question may be examined as well at law as in equity. Doe v. Winn, 1 Wheat. 380; Dixon v. Doe ex dem. Porter, 23 Miss. 84. All the facts necessary to pass upon the legality of Green's patent is embodied in it.

But it is further objected that, inasmuch as the state accepted Green's money, it is estopped from denying his title and making a subsequent grant. It may be responded that the lands of which the *locus in quo* is part, were created a fund for certain purposes, to be administered by the counties by a sale of the scrip and use of the money for certain purposes. The money never went into the treasury for ordinary state purposes, nor was it subject to the appropriation or control of the state. Moreover, this point was necessarily involved in Jackson v. Dilworth, and is concluded by the judgment in that case. There, the patentee had paid his money to the commissioners of Tunica county, for the scrip, and had made a location in Attala, for which a patent emanated, yet his patent was declared void

These views made it unnecessary to consider the objections to the evidence offered or the instructions granted and refused.

Judgment reversed and a *venire facias* awarded.