BRUCE ET AL. v. JONES.

[78 South. 9, Division B.]

1. PUBLIC LANDS. *Disposal of swamp lands. Conclusiveness of report of land commissioner.*

Where the record of the swamp land commissioner, recited that he had made a sale in accordance with and upon compliance with

Laws 1857, chapter 18, such record was conclusive of the fact recited and sufficient to divest the title of the state.

2. DISPOSAL OF SWAMP LANDS.   *Vested right.*
   The state having parted with its title to swamp land under the act 1857, chapter 18, and by the act of the commissioner, could not thereafter divest title out of its vendee by requiring such grantee to file proof of such fact with an officer of the state.

3. PUBLIC LANDS.   *Disposal of swamp lands. Equitable title.*
   Where a vendee had acquired a perfect equitable title to swamp lands from the state under Laws 1857, chapter 18, such title will be upheld in the absence of proof that the owner or purchaser has failed to comply with the act.

4. TAXATION.   *Grant of swamp lands.*
   Where the equitable title to swamp land has passed from the state to a purchaser and he was entitled to have a patent issued to him, this was sufficient to make the land taxable and a tax sale of such land would confer title on such tax purchasers.

APPEAL from the chancery court of Harrison county.
Hon. W. M. DENNY, JR., Chancellor.

Suit by J. L. Jones against A. C. Bruce and others. From a judgment for complainant, defendants appeal.

The facts are fully stated in the opinion of the court.

*C. S. Street,* for appellant.

The bill is defective because it fails to aver that Eugenia Isaacs was living on the land, or had erected buildings or machinery of a useful kind upon the land, or that she had same, or any part of it in cultivation. Indeed, it is nowhere averred that the land was or is swamp and overflowed land, and as the Acts of 1857 was dealing entirely with swamp and overflowed lands, it follows that the bill is defective. It is not averred that Eugenia Isaacs ever at any time claimed said land under the alleged purchase from the county swamp land commissioner, or that she ever cultivated it, or lived upon it, or exercised any acts of ownership over it, or sold it. In truth, while it is averred that she purchased it from the county swamp land commissioner

in 1858, the next time we hear of it was on March 1, 1897, when it is alleged that it was sold for the taxes of 1896.

No decision has been found construing the Act of 1857, but it seems to be an amendment of the Act of March 16, 1852, which later act was construed by our supreme court in *Clements* v. *Anderson,* 46 Miss. 581, citing 39 Miss. 773. See *Green* v. *State* 56 Miss. 774. wherein it is said, on page 599, that that act "did not impart a grant of the fee to the several counties. The title was retained by the state. The commissioners appointed by the county authorities under the second section, were agents to make sale of the scrip, to receive the money, and upon producing evidence of a purchase and location to the secretary of state, the patent emanated, which divested the state of title. The grant then to the counties was not the land itself, but the money arising from the sales, to be expended by them in the reclamation of submerged lands, and. the improvement of the navigation of the streams."

Now, the act under review of 1857 was only an amendment to the Act of 1852, so as to make it apply to Harrison county, also, it would seem that *Clements* v. *Anderson,* above cited, settles the matter adversely to the contention of appellee.

Furthermore, an act in relation to swamp lands was passed by the legislature in 1877 (Laws 1877, chapters 15 and 18, page 35) requiring the secretary of state to publish for four weeks a notice to all persons who had "heretofore entered or purchased any state lands and have not received patents for same from the state, to come forward and procure the same, by paying the purchase money in case the same has not already been paid; and in case the purchase money has been paid in good faith, to exhibit receipt therefor, or satisfactory proof that such receipt has been mislaid, lost or destroyed, and upon presentation of satisfactory proof of such payment, or on payment of the purchase money

117 Miss.—14

where the same has not been paid, the secretary of state shall issue patents therefor, etc."

Another act, with reference to swamp lands, applying solely to Harrison county, and consequently to the very land here in controversy, was passed by the legislature in 1892 (Laws 1892, chapter 98, p. 376), and by said act: "It shall be the duty of the secretary of state, immediately after the passage of this act, to cause notice for six months to be published in the official journal of the state, to all persons in Harrison county who may have heretofore purchased any of the swamp lands of the state, who have not received patents for the same, to come forward and procure the same; in case the purchase money has been paid in good faith, to exhibit the certificate or receipt therefor, or satisfactory proof that such certificate or receipt has been mislaid, lost or destroyed, and on presentation of satisfactory proof of such payment, the secretary of state or land commissioner shall issue patents therefor; and should any other person than the one already holding possession by reason of any such sale, purchase the same prior to, and secure a patent for the same from the secretary of state or land commissioner, through mistake, misrepresentations, or otherwise, it shall be the duty of the secretary of state or land commissioner, on proper showing of the parties interested, to cancel such patent and issue another patent to the prior claimant; provided, this act shall expire by limitation two years after its passage."

It will be noted that the Act of 1877, above quoted is general in its nature and applied to all swamp lands in the state where patents had not issued; whereas, the Law of 1892, above quoted, has particular and sole reference to swamp lands in Harrison county, and it will be noted that under this act it was made the duty of the secretary of state to cause notice to be published for six months to all persons having purchased swamp lands, in Harrison county, and who have not

obtained a patent therefor, to exhibit the certificate of purchase or to make satisfactory proof that the certificate had been lost, mislaid or destroyed, and procure a patent. The act further provides that it will expire by limitation two years after its passage, which means that a purchaser of swamp lands holding a receipt or certificate who fails to take advantage of the provisions of this act within two years after its passage thereby loses his right to have a patent from the state. The court's attention is called to the fact that both the Acts of 1877 and 1892, negative the idea that the Act of 1857 granted the fee-simple title of the swamp lands in Harrison county to that county. If the fee had passed by the Act of 1857, the deed or patent would thereafter have been granted by the county and not by the state, and yet we find the legislature in 1877 and again in 1892 calling upon purchasers of swamp land in Harrison county to produce proof of purchase to the state and obtain a patent from the state—not from the county.

The bill does not aver that the title passed from the state to Harrison county under the Act of 1857, or any other act; nor does it show that Eugenia Isaacs complied with either the Act of 1877 or that of 1892, and it is not shown that a patent ever issued covering this land until the one was granted to Mattie Barksdale in 1903, under which defendants claim, it seems plain that the title of the state did not pass to the board of police of Harrison county under the act of 1857. The act itself shows that only control of the lands—that is, the funds derived from a sale—should pass to the county.

And, in construing the Act of 1857, it might be helpful to compare its provisions with those of the act of October 20, 1852, which has reference to swamp land in Monroe county. Under the latter act, the legislature clearly meant to divest the state of title, and it used language which cannot be misunderstood, for it (the Act of 1852) provides that: "The state of Mississippi hereby divests

herself of all title she may have acquired, or may here-
after acquire to said lands, and it shall be the duty of the
secretary of state to issue a patent to said commissioners
(of Monroe county) so soon as same is confirmed by
the secretary of the interior." Laws of Mississippi,
called session 1853, page 57.

No such language was used in the Act of 1857, with
reference to Harrison county, as was used in the Act of
1852 with reference to Monroe county, and the difference
in the two acts is so marked as to be significant, and no
patent was issued to Harrison county by the state under
the Act of 1857. At least, the bill does not allege that
one was issued, consequently, the Act of 1857, did not
pass the title to Harrison county, nor to its board of po-
lice, but in effect made the county and its board of police
agents or representatives of the state to find purchasers
and make a sale of the land, and issue certificates to the
purchasers, which could be presented to the state and
a patent procured, and thus the state would, for the first
time part with the legal title. This is clearly stated in
the act of March 16, 1852, construed in the claimant's
case, *supra,* of which the Act of 1857 is only amenda-
tory, as to Harrison county.

To sum up, it is contended that the act of 1857 did not
grant the fee-simple title to Harrison county; that, at
most, the members of the board of police had authority
only to sell a limited quantity, to wit: One section, to a
person living on it, or cultivating it, or who had improved
it in some way, and such sale must of necessity be
followed by the issuance of a patent by the state to such
purchaser, as provided in the act of March 16, 1852,
of which the Act of 1857 was only an amendment so as
to cover the lands in Harrison county. The Act of 1857
does not repeal the Act of 1852, under which a patent
is necessary. If the legislature had meant by the Act of
1857 to divest itself of title and vest the title in Harrison
county, it is a little strange that it told Harrison county

that it could not sell more than one section to any one person, and that person must be living on it, or cultivating it, or improving it in some way. These provisions are inconsistent with an intention to divest the state of title by said Act of 1857, and the Acts of 1877 and 1892, heretofore referred to, strengthen this conclusion. It follows, therefore, that the chancery court erred in over-ruling the demurrer.

*White & Ford*, for appellees.

There are two propositions on which we rely: First, the county of Harrison at the time of the sale to Isaacs was the owner of the land; second, if mistaken in this, the legislative scheme contemplated that the sale of these swamp lands for the purpose of complying with the purpose of the Act of Congress, and deriving revenue therefrom, and further placing them on a taxation basis, should pass a good equitable title to the purchasers thereof, which was subject to taxation and would pass to a purchaser at tax sale.

Appellant contends no conveyance was ever executed to Eugenia Isaacs. We say, first, that the stub of certificate No. 57 R. P. 20, shows a sale of the land in question to Eugenia Isaacs; second, the conveyance itself would simply be the muniment of title, and if the buyer was entitled to it, it made no difference whether she got it or not, and especially when appellant cannot complain of its non-execution. He must recover, if at all, on the strength of his own title; third, the minute book is sufficient to show a conveyance, or at least takes the place of a conveyance, if one was indeed necessary. Appellant then says the bill does not aver that the State ever granted the fee-simple title to Harrison county, or to Horn, as swamp land commissioner, and shows no authority in Horn to sell. These are matters of law, not necessary to plead, and we must look to the acts of the legislature to answer that criticism.

Counsel then makes a technical objection to the bill, to wit: That it does not aver that Eugenia Isaacs was living on the land or that she had erected buildings or machinery of a useful kind or had it in cultivation. To be frank the bill does not allege that the commissioner deducted his commissions, as the act provides; that he gave the notice as required; that the board met at the time specified; that the commissioner made a bond with two or more sureties as the act says. The law presumes that public officers do their duty, as we will cite authority to show. Because of lapse of time these matters would be impossible to show.

Appellant further says the bill does not allege the land was swamp land and overflowed land. The bill alleges the land was granted to the state of Mississippi by the United States government as swamp land; that it was sold by the swamp land commissioner, a swamp land certificate was issued and reported by the swamp land commissioner. The bill shows then that appellant is claiming it under a swamp and overflowed land patent. If appellant insists the land is not swamp land, it seems he would not have any right to his patent at all. The Act of Congress of September 28, 1850, only referred to swamp and overflowed lands and we are dealing with lands granted under that act. Counsel then cite *Clements* v. *Anderson*, 46 Miss. 581, decided in 1872, which dealt with the Act of March 16, 1852, and not with the Act of 1857 (involved here).

The above case is a case where a purchaser of scrip was located on land in a different county from that named in the scrip. Furthermore the money derived from the sale of the land never went into the treasury for the purpose of the act and the court for that reason held there was no estoppel on the part of the state to attack the title after receipt of the purchase money. This same case also lays down the rule that in matters of the kind here under consideration, the entire legislation on the subject must be looked to,

as well as the policy and reason of the legislation. Judge J. A. P. CAMPBELL, who won the Clements case, says in his brief that the Act of 1852 "placed the title in the counties," and he is certainly eminent authority.

But let us look further. *Clements* v. *Anderson* was the second case in Mississippi dealing with swamp lands. *Jackson* v. *Dilworth,* 39 Miss. 772, was the first, in which HANDY, J., spoke for the court and Judge CAMPBELL was also on the winning end of the case. This case says these lands were appropriated and granted to the counties, and that the "grant of the lands by the act of March 16, 1852, to the counties embraced within the provisions of the Act, became a vested right in those counties," and that the legislature could not impair that vested right. See p. 778.

These cases also hold that even if the counties should consent to an impairment of the vested right such could not affect the rights of purchasers of scrip.

We say that *Clements* v. *Anderson,* in so far as it is in point, is authority for appellee. Counsel for appellant overlooked the act approved February 10, 1860. See Acts 1859, page 329, as follows: "An act for the better securing to purchasers of swamp lands in Harrison county, titles to the same. Section 1. Be is enacted by the legislature of the state of Mississippi, that the secretary of state be authorized and required on application of purchasers of swamp lands in said county, under the Acts of 1857–8, to furnish to holders of certificates under said act, patents for the same.

"Section 2. Be it further enacted, that all the holders of the original certificates on presentation of said certificates to the secretary of state, be entitled to patents, and all holders of transfers of any such certificates when such transfers are properly and legally made and certified to by the clerk of the probate court of said county, be also entitled to patents.

"Section 3. Be it further enacted, that when any such certificate of purchase be lost, mislaid or de-

stroyed, the board of police of said county on proper proof of said losing, mislaying or destruction, be authorized to cause a new certificate to be issued in place of the lost one.

"Section 4. Be it further enacted, that the secretary of state be allowed one dollar for every such patent issued, when such patent does not contain or include more than one section of land, and in the same ratio for all over the quantity, of one section which any one patent may contain.

"Section 5. Be it further enacted, that this act take effect and be in force from and after its passage."

He however, refers to two acts, one enacted twenty years after the Act of 1857, and nineteen years after the equitable title at least had passed from both the state and county, and the other thirty-five years thereafter, to wit: Chapter 15, Laws 1877, and chapter 98, Laws 1892. It is well to bear in mind that in the year 1892, the land commissioner was given charge of the swamp lands succeeding the swamp land commissioner. Code 1892, sec. 2566.

These acts, however, we submit strengthen our contention in that they constitute further recognition of these swamp land sales by the state. If the land, or the equitable title therein, was subject to a sale for taxes, Dedeaux's (appellee's grantor) confirmation vested title in him. Section 498, Code 1892, provides that the decree "in all courts of the state shall be held as conclusive evidence that the title to said land was vested in complainant, as against all persons claiming the same under title existing prior to the sale for taxes." There is no infirmity shown in the confirmation proceedings.

Equitable title subject to sale for taxes. After a final homestead certificate to public lands has been given, entitling the holder to a patent, the lands are subject to state taxation, although the patent has not yet issued. When a person does everything that is

necessary to entitle him to a patent for a tract of public land, he becomes the equitable owner thereof. *Burcham* v. *Terry,* 29 Am. St. Rep. (Ark.) 42; *Gierkson* v. *Forbes,* 26 Am. St. Rep. (Ark.) 29; *Herrick* v. *Sargent,* 132 A. S. R. (Iowa) 281, and extended note on page 332, citing cases from various states and the U. S. supreme court; 37 Cyc., 867, and cases cited; *Wisconsin Central R. R. Co.* v. *Price County,* 33 L. Ed. (U. S.) 687; *Hoskins* v. *I. C. R. R.,* 78 Miss. 768; *Witherspoon* v. *Duncan,* 4 Wall, (U. S.) 210; *Danforth* v. *County,* 74 Am. St. Rep. (N. D.) 808.

Performance of duty by person making sale. "There is a palpable distinction between acts done by persons acting in an official capacity, and acts done by private individuals. Liberal indulgences and intendments are made in favor of the former. If an official act comes into question the presumption is in favor of its propriety and validity, unless a departure from or violation of law is apparent on the face of the transaction. It was declared in *Wray* v. *Dee,* 10 S. & M. 461, that this is a general principle applicable to most acts of a ministerial or official character." *Cavany* v. *Koon,* 45 Miss. 74; *Cooper* v. *Granberry,* 33 Miss. 117; *Hamblen* v. *Hamblen,* 33 Miss. 455.

The same rule applies as would apply to the introduction of a tax deed. Any other rule would be unjust. In this case the defendants, claiming the land under the alleged patent of 1903, would require the complainant to go back to the year 1858 and show that Eugenia Isaacs lived on the land, had it in cultivation, erected buildings and had useful machinery, etc.

Counsel further complain that the bill is subject to demurrer because it does not aver that the land was swamp and overflowed land. This is also covered by the authorities above cited because it is presumed the officers did their duty and these matters will not be inquired into collaterally. *Dabney* v. *Hudson,* 68 Miss. 295.

Besides it is alleged in the bill and admitted in the answer that this land was granted to the state by the act of September 28, 1850; the Swamp Land Act, and that it was patented to Mattie Barksdale, appellant's predecessor in title, by "a swamp and overflowed land patent" (R. 4. and 15).

Presumption of grant. After a great lapse of time and a series of circumstances disclosing the enjoyment of an unchallenged title during such period, the courts will presume whatever grant may be necessary to quiet the title. *Townsend* v. *Boyd,* 12 L. R. A. (N. S.) 1148, 10 R. C. L. 876. *Caruth* v. *Gillespie,* 109 Miss. 679, holds grants from the sovereign are presumed from long continued possession. It is true we have not plead our possession, except to say we are now in possession, and this rule is not expressly made in the Caruth case to extend to cases where there is no possession. Appellant plead adverse possession, but introduced no proof thereof. We do not cite the above cases as cases in point at all, but simply to show the trend of the courts in favor of old established titles as against subsequent titles from the same source.

The case of *Henderson* v. *Blair,* 102 Miss. 640, is conclusive of this case. It had reference to the Act of 1852 relating to Monroe county, referred to by appellant, but the Act of 1852 for Monroe county was amended in 1854 at page 550, Laws 1854, which amendment made the act read along the same lines as the Harrison county and other acts, being a part of the general scheme for disposing of these lands. As this brief is already too long, we will simply say *Henderson* v. *Blair,* lays down the rule that in construing statutes "the legislative intent must be determined from the view of the whole act with reference to the subject-matter to which it applies," and "that taking this act by the four corners and viewing it as a whole with reference to the duty imposed upon the state by the act of Congress under which she received the land, and

in the light of the general legislative intent, apparent
in all of the statutes dealing with this land to appro-
priate it to reclamation purposes, within the counties
where situated, it seems to us manifest that by it the
legislature intended to divest the state of all title to
the land and invest it in the swamp land commissioner
for the benefit of the county.''

In the above well-considered case, SMITH, C. J., de-
livered the opinion of the court. Further, see *Lumber
Co.* v. *State,* 97 Miss. 595, where the court quotes the
opinion in *State* v. *Delta & Pine Land Company*; *Ham-
mer* v. *Lumber Company,* 100 Miss. 349.

Appellant's position is that the failure to issue the
patent destroys the sale. The legislation itself serves
the purpose of a patent. It is a grant. It was nec-
essary that the state dispose of the lands. It would
have been a burden when retained by the state, a
benefit when sold. The state by retaining the lands
would have defeated the very purpose for which Con-
gress granted the lands to the state. The Act of 1857
made no provision for patent, and the Act of 1850, was
passed providing for patents for the express purpose of
securing the title of the purchasers. The Act of 1857
does provide that a copy of the report of the members
of the board of police ''duly authenticated, shall be
evidence of the matters therein contained in any court
of law or equity in this state.''

We contend this means that this copy should serve
as the evidence of title of the purchaser. For what
other purpose could it have been inserted?

What did these purchasers get if they didn't get
the land itself? Certainly they got the equitable title,
which is good in equity, even if a patent was neces-
sary. *Brill* v. *Stiles,* 85 Am. Dec. (Ill.) 364. This
equitable title was subject to sale for taxes when De-
deaux bought it, but the patent being merely the muni-
ment, no one except the person entitled thereto can
complain of its nonissuance. Counsel will hardly deny

that Eugenia Isaacs in 1877 had a right to a patent. No legislation could be enacted to take her land away for simple failure to appear and get what she was entitled to, especially when such act was not in existence at the time she purchased.

We respectfully submit that the case should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

This is an appeal from a decree of the chancery court confirming title to certain lands in Harrison county under claim of title through the swamp land commissioner, created by chapter 18, Laws, 1857, p. 69. The complainant Jones claims through a title under this act and through a tax sale made in 1897, whereat said lands were sold for taxes, and thereafter a suit confirming the tax title was filed and a decree obtained in the year 1905. In the year 1903 the state issued a patent to the said lands to Mattie Barksdale, and the appellants claim through this chain of title. The chain of title of each of the parties was introduced in evidence and the chancellor decreed for the complainant. It is the contention of the appellant that the sale by the swamp land commissioner did not divest the state of its title, and, therefore that the complainant failed to show title in themselves, and that the state having issued the patent in 1903 the appellant acquired the title. Section 1 of chapter 18, Laws 1857, provides that the member of the board of police of said county of Harrison shall severally have full power and control over the swamp and overflowed lands in their respective district, and may sell to any person living on any of said lands, or who may have the same in cultivation, or who may have erected buildings or machinery on said lands not exceeding one section at five cents per acre, and provides that when more than one person shall make application to enter any of said lands on the day

appointed, and shall be present and ready to enter same, then such lands shall be offered for sale at public vendue to the highest ·bidder for cash. Section 5 of the act requires each member of the board of police at least twice in each year to report to the board of police all sales made by him, and all entries of land made in his district, and to whom such sales were made, and by whom such entries were made, and such report shall be filed in the probate clerk's office, and shall be recorded in the minutes of the board of police, and a copy of such report, duly authenticated, shall be evidence of the matters therein contained in any court of law or equity in this state. The act also provides for advertising the said lands, and it is contended in the present suit that the bill does not allege that the purchaser lived upon the said lands, and that it came within the class provided for in the act, and does not sufficiently show compliance with the requirements of the act before the sale.

The report of the commissioner recites that the commissioner, in pursuance of the act of the legislature of the state of Mississippi entitled "An act to amend an act entitled an act . . . donating swamp lands to certain counties, and the reclamation and disposition of said lands in Harrison county," approved November 19, 1857, and after complying with all the requisites of said law and due and legal notice given as therein directed, he has sold to the following persons for the following prices on the days and dates therein mentioned, to wit, setting out a list of conveyances, including the lands in question, sold to Eugenia Isaacs on the 2d day of June, 1858. The law providing that the commissioner had the power of sale, and that a report of the sale spread upon the minutes should be received as evidence in the courts of the things therein recited, we think the title of the state to this land passed, and that this report of the commissioner is sufficient to vest the title in the purchaser, and is sufficient proof of that

fact. *Clements* v. *Anderson,* 46 Miss. 581; *Jackson* v. *Dilworth,* 39 Miss. 772; *Green* v. *State,* 56 Miss. 774—in which cases it was held that the act of March 16, 1852 (Laws 1852, chapter 14), conveyed a vested right to the counties in which the land was situated, and the purchasers thereunder had a vested right which the legislature could not disturb. It follows, then, that a conveyance thereafter by the state to the appellants, the vendors in the chain of title, was void. The state, having parted with its title by this act and by the act of the commissioner, could not thereafter divest title out of its vendee by requiring such grantee to file proof of such fact with an officer of the state, and the acts referred to in the brief of appellant cannot have the effect of voiding this title.

Certain it is that the act conferred a perfect equitable title, and as this is a suit in equity the title of complainants is sufficient in the absence of proof of failure of the purchaser to comply with the act, or that the terms of the act were not complied with by the purchaser. The equitable title having passed, and the purchaser being entitled to have a patent issue, was sufficient to make the land taxable, and the tax sale would confer title to the tax purchaser. 27 Amer. & Eng. Ency. L., p. 644, clause "c" and note 3. The act in question (Laws 1857, chapter 18, p. 69) pointed to all parties interested a source where the information could be obtained, to wit, the minutes of the board of police of Harrison county. We therefore think the chancellor did not err in confirming the title, and the decree is affirmed.

*Affirmed.*

STEVENS, J. (specially concurring). I think the right result was reached by the chancellor in this case, and that the final decree appealed from should be affirmed. I have some doubt on the point discussed in the opinion of the court and the conclusion there-

reached that the report of the swamp land commissioner was in itself sufficient to vest the title in the purchaser. In a technical sense this means that the report of the commissioner operated as a patent. But manifestly under the act of 1857 this report of the commissioner is made competent evidence of the fact that the state sold the land and received the money therefor. The act itself expressly provides that:

"A copy of such report, duly authenticated, shall be evidence of the matters therein contained in any court of law or equity in this state."

This report shows that the land in question was sold to Eugenia Isaacs in June, 1858. When it was sold and the consideration received and accepted by the duly constituted authorities of the state, the equitable title passed, and the land was thereafter subject to taxation. Being subject to taxation, the lands were sold for taxes in 1897, and through this tax sale the complainant claims title. The legislature by the act of 1857 was attempting to dispose of the lands in a way to accomplish the purpose which the national Congress had in enacting the act of 1850 (Act Cong. Sept. 28, 1850, chapter 84, 9 Stat. 519 [U. S. Comp. St. 1916, sections 4958-4960]), granting the wet and overflowed lands to the state. The state evidently desired its inhabitants to enter and settle upon these wet lands, drain, reclaim, and utilize them. The state permitted this land which had been duly sold by the swamp land commissioner to be placed upon the assessment rolls and state and county taxes to be exacted thereon and, so far as this record discloses, nowhere repudiated the sale made to Eugenia Isaacs. It is not shown that the written report of the swamp land commissioner of Harrison county was incorrect in any particular, and no suspicion is cast against this public record. The integrity of the record being unquestioned, it is competent evidence of the sale, and at least shows that the equitable title passed from the state. If the

state is shown by its own records .to have sold this land to Eugenia Isaacs, then the state in equity should not have sold it to any one else at a later period. The state and its second assignee, the complainant herein, should be bound by the same high standards of morals and equity as the state exacts of its citizens generally in their dealings one with the other. Without discussing in detail, therefore, the several acts of the legislature dealing with swamp and overflowed land or previous decisions of this court, I think equity has been done in this case, and that this view of the law is not in conflict with any previous decision of this court, and especially *Clements* v. *Anderson,* 46 Miss. 581, so much relied upon by appellant.

*Affirmed.*