STATE *ex rel.* MOORE, Land Com'r, *et al. v.* KNAPP, STOUT
& CO. *et al.* (two cases).*

(Division A. Oct. 20, 1924.)

[101 So. 433. No. 24506.]

PUBLIC LANDS. *Patent regular in form conclusive, in absence of fraud
or mistake.*

> Where patent, granted by state under Laws 1898, chapter 46, is
> regular in form, the court, in absence of fraud or mistake, will
> not inquire into validity of sale as against contention that Const.
> 1890, section 95, and Ann. Code 1892, section 2564, were not com-
> plied with.

*Headnote 1. Public Lands, 32 Cyc, p. 895 (1926 Anno).

APPEAL from chancery court of Perry county.
HON. V. A. GRIFFITH, Chancellor.

Suits by the state of Mississippi, on the relation of
R. D. Moore, land commissioner, and another against
Knapp, Stout & Co. and the Scranton Lumber Company,
and against Knapp, Stout & Co. and the J. J. Newman
Lumber Company. From decrees of dismissal, plain-
tiffs appeal. Affirmed.

*F. C. Hathorn, E. B. Williams, Geo. D. Anderson,
Cephas Anderson* and *E. A. Anderson,* for appellant.

I.  The sale is void because made to corporations or
an association for a less price than the land was subject
to sale to individuals, in violation of section 95 of the
Constitution, which prohibits sales of lands belonging to
or under the control of the state to corporations or asso-
ciations at a less price than that for which it is subject
to sale to individuals.

Defendants filed a demurrer to the amended bill of com-
plaint, which demurrer admitted every material aver-
ment of the amended bill except those charging or tend-

ing to charge fraud, which charges of fraud were denied under oath. The amended bill of complaint charges that the lands never became subject to sale to individuals at a price not greater than the price at which the same were sold to corporations and associations, as by section 95 of the Constitution required; and charges that said lands were never subject to sale to individuals at any price; and charges that said lands were sold to a corporation at a less price than the same were subject to sale to individuals, in violation of the plain mandate of section 95 of the Constitution. These averments were not charges of fraud, therefore they were admitted by the demurrer. Moreover, the evidence shows conclusively that the sale was to a corporation at a less price than the land was subject to sale to individuals.

This brings me to a discussion of the question of whether the lands here involved are lands "belonging to or under the control of the state;" i. e., lands dealt with by section 95 of the Constitution. They are certainly lands "under control of the state." 13 C. J. 837; *Hager* v. *Reclamation District,* 111 U. S. 701, 28 L. Ed. 569.; *American Emigrant Co.* v. *Adams Co.,* 100 U. S. 61, 25 L. Ed. 563; *Cooper v. Roberts,* 18 How. (U. S.) 173, 15 L. Ed. 338; *Street* v. *Columbus,* 75 Miss. 822; *Mosspoint Lumber Co.* v. *Board of Supervisors,* 42 So. (Miss.) 290; *State* v. *Vicksburg & Nashville R. R. Co.,* 51 Miss. 361. These authorities conclusively show that these lands are held by the state in the same capacity, i. e., in the sovereign capacity of the state. A state exercises its sovereign power and control by and through its legislature.

As indicating the importance this court attaches to the requirement of section 95 of the Constitution that the public be given an opportunity to purchase the public lands, and that sales thereof made to favored persons and to the exclusion of the general public are frowned upon by the court, we cite the recent case of *McPherson* v. *Richards,* 98 So. (Miss.) 685. This case involved the

question of the validity of an order of the board of super-visors attempting to validate a void lease to a sixteenth section.

In the light of the foregoing authorities, and in view of manifest purpose of section 95 of the Constitution to secure for the general public an equal opportunity in purchasing all lands belonging to or under control of the state, there is no escape from the conclusion that the sale in the case at bar is void as a sale of the land.

II.   Appellants contend that the sale and patent is void because same violated section 2563 of the Code of 1892, prohibiting certain corporations from purchasing or becoming the owner of the public lands, and because same violated section 2564 of the Code of 1892, limiting the amount of public lands any person can acquire in any one year to one quarter section, which two statutes it is contended were enacted in virtue of the mandate of section 95 of the Constitution to the end that the guaranty therein of an equal opporunity with corporations and associations in the purchase of the public lands might be made available to individuals, most of whom are poor men able to buy lands only in small subdivisions.

Counsel for defendants cite many authorities in support of their contention that the lands here involved are not public lands.

All of these lands have a trust fastened upon the proceeds of the sale thereof, but the lands themselves are all under full and complete control of the state, subject to sale and disposition under all the limitations and restrictions fixed by law.   It must follow then that these collcge lands were "public lands," within the meaning of the term as used in these code sections, at the time the sale and patent was made.   *U. S.* v. *Garretson,* 42 Fed. 22-24; *U. S.* v. *Buchannan,* 232 U. S. 75-76, 58 L. Ed. 513-514; *U. S.* v. *Blendaur,* 128 Fed. 912; *U. S.* v. *Bisel,* 8 Mont. 29; *Union Pacific Ry. Co.* v. *Kargas,* 169 Fed. 459; *State* v. *Kennard,* 56 Neb. 256-258.

It will be observed that the foregoing authorities stress the point that in determining the sense in which the term "public lands" is used in a statute depends upon the question of what the legislature intended. In other words the statute is to be construed, and the term "public lands" is to be given effect in the light of the policy underlying the statute, which must take into consideration the evil sought to be met by the statute or constitutional provision designed to provide a remedy against the evil. See, also, *Winston* v. *Day,* 49 So. (Miss.) 264; *Lumber Co.* v. *State,* 97 Miss. 571.

III. Appellants contend that all that could lawfully have been sold and conveyed to appellees, under the facts and circumstances disclosed by the record and in view of section 95 of the Constitution and sections 2563 and 2564 of the Code of 1892, was the timber on the land and a thirty-year lease thereof; and therefore, under section 2444 of the Code of 1892, said sale and patent can only be upheld as a sale of the timber with thirty years lease of the land within which to cut and use the same, and that the patent must be held to be void as a conveyance of the land.

In discussing this contention of appellants, it is conceded that the trustees had, under chapter 46 of the Laws of 1898, perfect right to sell the timber and grant a lease of the land for a term of not to exceed thirty years, without limit as to qualifications of the purchaser or the amount of land to be embraced in such timber sale and lease.

It is certainly more than fair to defendants to concede, for the purposes of this contention, that the patent is good as a sale of the timber, and to contend that it is void only as a conveyance of the land; and there is ample authority both by statute and by decision of this court, for construing the patent to be a good sale of the timber with thirty years within which to cut and use the same,

but void as a conveyance of the lands.  See *Dantzler Lumber Co.* v. *State,* 53 So. 1.

IV.  Appellants contend that it is manifest from the record in this case that the purchasers were in a conspiracy by which they acquired the lands at an inadequate price and in fraud of the state.  The bill charges fraud and collusion on the part of the appellees, Knapp, Stout & Company and other purchasers from the state, of the entire tract of land given by the federal Government to the state or under the control of the state.  They conspired together to keep down competition and that they pooled their interests and purchased these lands, over twenty-three thousand acres, at four dollars fifteen and two-thirds cents.  The appellant in this argument says that article 11 of the statement of facts is made out by the evidence of Dan McIntosh and J. C. Gordon, trustee and witnesses for the appellees in the court below.  Each witness testified that they had a meeting of the trustees and there were sealed bids made by these four big corporations, Newman Lumber Company, Knapp, Stout & Co., Sage Land & Improvement Company, Della A. Blodgett with the Blodgett interests, and that the Sage Land & Improvement Company was the highest bidder, and that Hemphill who represented the Newman interest raised this bid, and in which they all withdrew their bids and came into a common understanding one with the other, in this transaction and the land was not sold at that time, and all along individuals were offering to purchase these lands that are involved now in this suit for fifteen dollars an acre, as shown by the testimony of Mr. P. E. Williams, also by other parties offering seven dollars an acre with one thousand dollar bonus for this identical property that is now in question, and the Alcorn A. & M. College lost net fifteen thousand five hundred twenty-two dollars and sixty-one cents.  This loss was caused directly by the four big corporations, Knapp,

Stout & Co., Newman Lumber Company, Della A. Blodgett with the Blodgett interests, and the Sage Land & Improvement Company by pooling their interests, and that this price of seven dollars an acre with one thousand dollars bonus was offered on the identical land that was bought by Knapp, Stout & Co. and which land was in the Knapp, Stout & Co's. zone of influence, which was in old Perry county, said territory now constituting Forrest and Perry, and the learned judge in the lower court failed to see that it was a pool and common agreement of these four big corporations of their interest that caused this loss of over fifteen thousand dollars. If there ever was a case made out from the evidence of pooling the interests of those big corporations and stifling trade for these lands, it is made out in Dan McIntosh's testimony for the appellees with the exhibits.

This case should be reversed and remanded to the lower court for the reason that it is in violation of the anti-trust law of the state of Mississippi and of the Constitution. The appellant further says that sections 198, 199 and 200 of the state Constitution of the Code of 1890 on trusts and combines was for the public welfare of the people of this state. The appellant will further ask the court to read *Kosciusko Oil Mill & Fertilizer Co.* v. *Wilson Cotton Oil Co.,* 43 So. 435; *Railroad Co.* v. *Searles,* 45 Miss. 528, 37 So. 942.

This is a much stronger case of unlawful combination than any of the above-mentioned cases. See, also, *Salt Co.* v. *Guthrie,* 35 Ohio St. 666.; *Northern Securities Co.* v. *U. S.,* 193 U. S. 340, 24 Sup. Ct. 436, 48 L. Ed. 679; *C. E. Knight Co.,* 156 U. S. 16, 15 Sup. Ct. 249, 39 L. Ed. 325; *Addyston Pipe & Steel Co.* v. *U. S.,* 175 U. S. 244, 20 Sup. Ct. 108, 44 L. Ed. 136; *Insurance Companies* v. *State,* 75 Miss. 24.

The appellant charges and says respecting the mistake of law on the part of the state officials for the sale of these lands that belonged to the state and under the com-

plete control of the state to foreign corporations, that
the people are not bound by the mistake of law of their
agents, but the facts are that if the officials of the state
had not been mistaken in the law of the state of Missis-
sippi and its Constitution that the appellees could not
have committed the fraud against the state of Missis-
sippi and the people, for when the foreign corporation,
Knapp, Stout & Co., entered the confines of this state
and bought state lands or land that was under the control
of the state, fraud was at that time consummated on
the part of appellees, for section 95 of the Constitution
of 1890, with section 84 of the Constitution and all of the
Statutory Laws of 1892, prohibits foreign corporations
from buying or speculating in lands in this state for
these laws were on the Statute books and was notice to
the appellees that if they bought these lands that they
were strictly violating the law, and it was fraud against
the public for them to purchase these lands.  If the citi-
zens of this state can be bound by the unlawful acts of
its agents in the contracts and sales of its public domain,
then the state of Mississippi is not a sovereign, if said
lands are bought in violation of the state 'Constitution
and the statutory laws; likewise, the United States Gov-
ernment would not be an indissoluble Union if the mis-
take of law of her agents could bind the United States
Government.

The appellant most humbly asks this court to think of
the crime that has been committed against the vital in-
terest of the farmers and settlers of South Mississippi
as well as the colleges through the sale of these lands for
a negligible sum.  You cannot build up a state or a Nation
under such violations of the laws and Constitution and
against the public policy of this country, and by the
sale of these college lands by the trustees, the foreign cor-
porations were not only hindering the progress of South
Mississippi, but it was as a knife or a dagger feeling for
the heart and life blood of the unborn citizens of this

great Commonwealth, because a country is always meas-
ured by its independent settlers and farmers, who are
the source of all wealth and prosperity; they make and
feed the Nation in time of peace and also in time of war;
but here in South Mississippi there is an acreage of one
hundred eight square miles of land hoarded up by these
mammoth corporations against the settlers of this State.
The trustees of said colleges handed these lands over to
the foreign corporations; the trustees were surely mis-
guided and overstepped the constitutional laws and the
laws of the state of Mississippi; and the land commis-
sioner so far forgot himself that he overstepped the law
and violated all the general laws of this state when he
put into one patent, thousands of acres of this virgin land
and sold it to a foreign corporation, and now these land
barons "holler out," "equitable estoppel," when there
was not one act of equity performed by these big land
barons, but there was, and is, a law that has been vio-
lated by them which is against the very existence of man-
kind in South Mississippi.

*Lamar Hennington* and *S. E. Travis,* for appellees.

We contend that the sale and patents of the lands in
question to the said appellee, Knapp, Stout & Co., under
the provisions of the said act of the legislature of 1898,
were valid and lawful acts in execution of the trust
created by said Act of Congress and in furtherance of
the public policy of the state of Mississippi as applied
to such trusts, and that the said appellee was invested
with title to said lands "according to the terms of said
patents," in fee-simple; that it was the duty of the legis-
lature of the state of Mississippi, in order to keep faith
with the United States and in the proper execution of
the trust created by said Act of Congress, to provide for
the sale of said lands so as to promote the best interest
of the said beneficiary, Alcorn A. & M. College; that this

duty was performed in the passage of said act under which the said lands were disposed of; that the said lands never became "public lands" within the meaning of chapter 73, Code of 1892, and especially never became public lands within the meaning of sections 2563 and 2564 of said Code, relied upon by the appellant; and that the sale complained of did not contravene the public policy of the state or any of the legislative or constitutional provisions invoked.

The United States here is the donor, the state is the trustee and the college is the beneficiary. The legislature was the sole spokesman for the trustee as to what legislation was necessary in the faithful execution of the trust, and its discretion in that behalf was unlimited by prior constitutional or statutory provisions. The legislature, the sole depository of the discretion to be exercised by the state, the trustee, as will be later shown by the authorities, exercised that discretion in the passage of said chapter 46, Laws of 1898, under which the sale attacked was made. The whole attack is based on the theory that the trustee should have commingled the trust property with its individual property and dealt with it so commingled. Such a course would have violated every principle of law by which the trustee is governed in the execution of such trusts. Such trustee must handle the trust property and trust funds separately and apart from his individual property and individual funds. This Act, chapter 46, Laws of 1898, is in perfect accord with the public policy that has existed in the state from the beginning as applied to lands donated by the Government to the state for educational purposes.

It follows from these considerations, that, if the legislature had provided for the sale of these college lands under said chapter 73, Code of 1892, such course would have breached the trust created by the said Act of Congress.

It is perfectly manifest, in the light of the various acts

718 STATE *ex rel. v.* KNAPP, STOUT & Co. [Sup. Ct.

and statutes referred to, that the legislature never intended that these college lands should be made subject to the provisions of chapter 73, Code of 1892. The title to these lands was in the Government at the time. The state did not own them and did not attempt to deal with them by said code chapter. Moreover, there is no provision in said code chapter which can be construed as applying to them.

Then it will be noted that section 2566 of said Code of 1892, expressly withholds from sale by the land commissioner the Choctaw School or sixteenth section lands, just as the sale of the college lands in question was withheld from this official. In connection with this general statement, attention is called to the fact that the Act of 1898 and the provisions of the Code of 1892 invoked by appellant are in hopeless conflict and cannot be applied to the same subject-matter.

Manifestly, the legislature could not have done less than was done by the said Act of 1898, without violating the trust imposed by said Act of Congress. There is not a shadow of ground for the contention that the said lands became subject to sale by the land commissioner under the provisions of said chapter 73, Code of 1892, or that said chapter or constitutional provisions relied on have any bearing on the subject. *Edward Hines Yellow Pine Trustees* v. *State,* 98 So. 445.

I. It is apparent from the foregoing general statement that the bill is based upon the wholly erroneous assumption that the lands in question were "public lands" and should have been sold as such and that, therefore, the sale made under said chapter 46, Laws of 1898, is void. Appellees contend in the first place that the said lands were not public lands as claimed by the bill. The authorities uniformly support appellees' contention on this point. 22 C. J. 249; 6 Words & Phrases, secs. 5793, 5794; 32 Cyc. 775-6; *Barber* v. *Harvey,* 45 L.

Ed. 968; *State* v. *Cumberland Tel. & Tel. Co.*, 27 So. 795, 52 La. Ann. 1411; *Ry. Co.* v. *Roberts*, 38 L. Ed. 380.

II.  THE STATE WAS EMPOWERED TO SELL AND THAT POWER WAS LAWFULLY EXERCISED. The state, as trustee, was empowered to sell the land in question as it saw fit. That power could be exercised only as might be prescribed by the law-making department, the legislature. The said chapter 46, Laws of 1898, was and is the only specific legislation on the subject. The sale assailed was made in strict conformity to its provisions. This sale is therefore perfectly valid. 32 Cyc. 876, citing many authorities. *Cooper* v. *Roberts*, 15 L. Ed. 341; *Simmons* v. *Holmes*, 48 Miss. 144-5; *State* v. *V. & N. R. R. Co.*, 51 Miss. 364-368; *Street* v. *Columbus*, 75 Miss. 836-37.

The court's attention is called in this connection to the fact that leases of sixteenth sections are made under statutes independent of the Code chapter relied on, and that boards of supervisors are authorized by Act of the legislature to sell the timber on these school lands in their respective counties, the power of sale being similar to that vested in the trustees of the college under the said Act of 1898. The state thus exercised its power to provide for the sale of this timber by Act of the legislature through the agency it deemed proper, the board of supervisors, and this court has uniformly recognized and upheld this authority. *State* v. *Blodgett*, 110 Miss. 768; *Lumber Co.* v. *State*, 97 Miss. 355, 57 So. 1; *State* v. *Dunnam*, 67 So. 461; *Lumber Co.* v. *Robertson*, 95 So. 244.

III.  VALIDITY OF APPELLEES' TITLE PRESUMED. APPELLANT BOUND BY EXHIBITS TO BILL. The state, the trustee, through its legislature, provided for the sale of the lands as its duty required, and the whole of the same was sold as directed by the agencies designated. The patents in question to appellee, Knapp, Stout & Co., made exhibits to the bill, show a full, complete and specific compliance

with said chapter 46, Laws of 1898, in the sale of said
lands. While the law did not require the trustees to enter
an order for the sale, the patent recites that the prop-
er order was made. In short, the allegations of and
exhibits to the bill show a perfectly valid sale. The ap-
pellant is bound by the recitals of these public records
and documents, and under the presumptions of the law
applying in such cases, the bill itself shows that appel-
lees have good, and valid title to the land in question.
*Edward Hines Yellow Pine Trustees* v. *State,* 97 So. 554;
*Graff* v. *Castleman,* 16 Am. Dec. 754; *Bruce* v. *Jones,* 117
Miss. 207-8. That appellant is bound by the exhibits to
the bill, see *House* v. *Gamble & Co.,* 78 Miss. 259; *McNeill*
v. *Gill,* 79 Miss. 455.

IV. No equity·upon the face of the bill. The ap-
pellees contend that the appellant does not come into
equity with clean hands, does not offer to do equity, is
guilty of the grossest laches, and that the facts set up
are such as to preclude the granting of any of the relief
prayed for on the ground of laches and equitable es-
toppel. This sale was made February 9, 1900, and, as
appears from the exhibits to the bill, title has long since
passed from the original state patentee for value and
through a number of innocent holders.

The state acquiesced in this transaction for more than
twenty years. The legislature directed the sale as made.
The trustees of the college, functionaries of the state,
made the sale. The land commission, Governor and sec-
retary of state assented to it. Every state official having
any duty in connection with the state's interest in the
subject-matter, has had knowledge, actual or constructive,
from the records required through all these twenty years
and more. The college, as appears from subsequent legis-
lation of which the court takes judicial knowledge, has
received the benefit of the grant and of the sale thus
made. As appears from the exhibits to the bill, all of the

patents and contracts complained of were of record in the counties where the land was situated, and all concerned charged with constructive knowledge of them.

We submit in this connection that the state is subject to the rules and maxims of equity and of judicial procedure the same as individuals. We submit further in this connection that the state, suing in its proprietary capacity, as here, is amenable to the same rules of law and justice as apply to private litigants. The authorities supporting this point also support other questions presented. *Cleveland T. & V. R. Co.* v. *State,* 39 L. R. A. (N. S.) 1219, 1226-1227; *U. S.* v. *Stinson,* 49 U. S. (L. Ed.) 725; *State of Iowa* v. *Carr,* 191 Fed. 257, 266-270; *Ayers* v. *Mitchell,* 3 S. & M. 693-4; *Johnson* v. *Jones,* 13 S. & M. 583; *La Republique Francaise* v. *Saratoga V. S. Co.,* 48 L. Ed. 253.

Now the appellant seeks to maintain the bill in violation of all these maxims of equity and principles of justice and judicial procedure. It delayed for over twenty years, holding on to and still holding to the fruits of the transaction. The purchasers have been out of their money for more than twenty years. The rights of innocent parties have intervened. It is utterly beyond the power of any court to restore the *statu quo.* Certainly, then, the bill has no standing in a court of conscience. Therefore, the demurrer was properly sustained.

Argued orally by *D. C. McIntosh, S. L. McLaurin* and *S. E. Travis,* for appellees, and *F. C. Hathorn* and *E. A. Anderson,* for appellants.

HOLDEN, J., delivered the opinion of the court.

The two appeals are in companion cases involving the same questions, and will be considered and decided together. The suits were instituted in the chancery court of Perry county by the state land commissioner and the state revenue agent, for the state, against Knapp, Stout

& Co. et al., to cancel and invalidate the title to certain lands patented by the state of Mississippi to the appellees, under an act of the legislature (chapter 46, of February 11, 1898), and to restore possession of the lands to the state, and to recover a money decree for the value of all timber and turpentine taken from the land, and the rental value for use and occupation thereof. From a decree sustaining a special demurrer, and a finding of no fraud by the court, the state prosecutes this appeal.

We shall state so much of the record only as is necessary to understand the opinion on the main and decisive question in the case. The bill attacking the title to the lands, patented by the state to the appellees on February 9, 1900, is mainly grounded upon the theory that the sale, in pursuance of the act of the legislature (chapter 46, Laws of 1898), was void, because it was in violation of section 95, Constitution of 1890, in that the sale was "to corporations or associations for a less price than that for which it is subject to sale to individuals," in that the land was sold in bulk, some twenty-two thousand acres, at a gross price, *viz.*, ninety-five thousand dollars, and was not offered to persons in quantities of one-quarter sections, as required by section 2564, Code of 1892, and for these reasons the sale was void as contravening the Constitution and statute announcing the law and public policy of this state on that subject. The bill also charged fraud and collusion by the trustees in making the sale. The charge of fraud, however, we might as well say now, was wholly unsupported by the proof offered before the chancellor, and the question of fraud in the case may be dismissed from any further consideration herein.

The appellees, Knapp, Stout & Co. et al., specially demurred to the bill (and denied the charge of fraud), and presented several grounds of demurrer, but, as we shall decide the case upon one ground alone, we will omit considering the others, except to merely mention them.

The demurrer urges, first, that the sale by the trustees,

commissioned and authorized by the legislature, was valid and was not contrary to section 95 of the Constitution of 1890, because that constitutional provision has reference to public lands, and not to lands granted in trust to the state for a designated purpose ,as the lands here were granted by the federal government for the sole benefit of the Alcorn College, and that therefore, as the lands here in question were specifically designated in trust for the state college, they were not public lands, or "lands belonging to or under the control of the state," in the sense intended by section 95 of the Constitution, and therefore section 2564, Code of 1892, which prescribes that one person may purchase as much as one-quarter section of the public lands, etc., is not applicable in the case before us, and that, when the land was sold in bulk to corporations for a gross price, there was no violation of the Constitution or the statute mentioned; second, that the bill is not maintainable, because the sale in bulk for a gross sum, without first offering the land to persons in smaller quantities, does not violate the said statute (section 2564, Code of 1892), because that statute is inapplicable, since the act of the legislature (chapter 46, Laws of 1898), prescribed the method of sale and superseded said section 2564, Code of 1892, and did not prohibit the sale of the land in bulk for a gross sum, but authorized the trustees to sell the lands in such way as their judgment deemed for the best interest of the college, and that the provisions of this special act for this particular sale were carried out and the sale was valid; third, the demurrer challenges the bill on the ground that the sale is valid, because the law presumes the trustees complied with the requirements of the Constitution and all statutes and the legislative act authorizing them to sell the land, and that, in the absence of fraud or mistake, the court will not inquire into or question the regularity or manner of the sale upon which the title from the sovereign state was granted; and,

fourth, the demurrer contends that equitable estoppel and its kindred principles should be applied against the state, holding it to the same degree of conscience and honesty that is required of individuals under like circumstances; that the state legislature received the money paid for the land, and thus impliedly ratified the sale, and the purchasers have since paid the taxes on the lands.

Following the grant by the United States government of the lands to the state, for the use and benefit of the Alcorn Agricultural and Mechanical College, the state legislature of 1898 adopted chapter 46, authorizing the sale of the lands by th eboard of trustees of the college, and in pursuance of that act the trustees sold the land to appellees and others, and a patent from the state was issued the purchasers in 1900, and it is these patents which are now attacked in this suit. The act authorized the trustees of the college to sell the lands or any part thereof for cash, as in their judgment would be for the best interest of the college, and to pay the proceeds of such sale into the state treasury. The sale was made and the proceeds, ninety-five thousand dollars were paid into the treasury and the patents duly issued to the purchasers.

We shall not take the space to set out section 95 of the Constitution of 1890, section 2564, Code of 1892, chapter 46, Laws of 1898, nor the form of the grant from the federal government (chapter 106, U. S. Stat. at Large, vol. 28, p. 673, 53d Congress), nor the patent issued by the state government in accordance with the sale of the lands made by the trustees under the said chapter 46, Laws of 1898, but reference is made thereto. We shall first dispose of the questions presented by the first, second, and fourth grounds of the demurrer as enumerated above, and will then discuss the third ground.

Conceding, for the purposes of discussion, but not deciding, that the lands involved in the case are public lands, in the sense contemplated by section 95 of the Con-

stitution, in that they are owned "or controlled by the state, and that the policy of the state was violated when the lands were sold to corporations or associations in bulk for a gross sum other "than that for which they were subject to sale to individuals;" and, second, granting further, for the moment, though not deciding, that the sale of the land to the appellee corporations in greater quantities than one hundred sixty-acre tracts to one person was contrary to section 2564, Code of 1892, if said section is applicable; and, fourth, making the further concession, for purposes of discussion, but not deciding, that the doctrine of equitable estoppel is inapplicable against the state where the state is complainant in a court of equity, still we think the demurrer was properly sustained by the lower court on the third ground we have enumerated—that is, that in the absence of fraud or mistake a patent to land issued by the sovereign state cannot be questioned, either in a court of law or equity, and that the title granted the appellee purchasers by the issuance of the patents in this case cannot be questioned, so far as the method or regularity of the sale is concerned, because "such a patent carries with it the presumption that all the legal prerequisites necessary to its issuance have been complied with; the presumption that the officers charged with executing land grants have performed their duties in regard to the several acts to be done by them." *Edw. Hines Yellow Pine Trustees* v. *State ex rel. Moore, Land Commissioners,* 133 Miss. 334, 97 So. 552.

There being no fraud or mistake shown in the sale of the land made by the trustees, as authorized by the act of the legislature of 1898 (chapter 46), which controlled the particular sale here involved (section 2564, Code of 1892), not being applicable here because of the later act (chapter, 46, Laws of 1898), which governs solely, and the patent conveying the title to the purchasers being regular in form, the courts will not review nor inquire into how the

trustees made the sale, but will follow the legal presumption that the sale was made in accordance with the Constitution, and laws of the state, as evidenced by the patent issued by the sovereign state.

Therefore whether or not as a matter of fact the trustees offered the land in conformity to the requirements of section 95 of the Constitution, so long as there was no fraud or mistake, is immaterial and is not a subject of inquiry by the courts; and the testimony in the lower court, in this regard, to invalidate the patent issued by the state was irrelevant and incompetent, and the decree of the chancellor dismissing the bill should be affirmed.

The judgment of the lower court is affirmed in both of these cases.

*Affirmed.*