LAMBERT, et al. *v.* STATE, et al.

Division B. Mar. 12, 1951.

No. 37850 (51 So. (2d) 201)

L. A. Wyatt, for appellants.

Jno. E. Stone, Assistant Attorney General, Patterson & Patterson, Heidelberg & Roberts, and E. A. Turnage, for appellees.

**Ethridge, C.**

This case involves the validity of an 1873 deed to a sixteenth (school land) section of land, and the application to it of the twenty-five year adverse possession statute. In holding the deed valid and rendering the judgment for appellants, some analysis of the historical background of sales of sixteenth sections, as well as of the immediate facts and legal issues, is necessary. The action originated as a suit by J. E. Lambert and C. J. Burns, appellants here and complainants below, to remove as clouds on their titles the claims of the appellees to the Southwest Quarter of Section 16, Township 6 North, Range 10 East, Lawrence County, Mississippi. The defendants and appellees are the State of Mississippi, Lawrence County, the Superintendent of Education of Lawrence County, and the Humble Oil and Refining Company, which is claiming under an oil and gas lease from the County to these school lands.

██ ██ Under the Act of Cession by the State of Georgia in 1802, ceding to the Union certain western territories of Georgia, the sixteenth section in each township was dedicated to the maintenance and support of its public schools. When Mississippi came into the Union in 1817, the Federal statutes and the Georgia Act of Cession operated to convey from Georgia to the State of Mississippi this right in sixteenth section school lands, as soon as the surveys were made and the sections designated. The legal title was vested in the State of Mississippi in trust for maintenance and support of the public schools of the inhabitants of each township. Jones v. Madison County, 1895, 72 Miss. 777, 18 So. 87; Gaines v. Nicholson, 1850, 9 How. 356, 13 L. Ed. 172; Cooper v. Roberts, 1855, 18 How. 173, 15 L. Ed. 338; Pace v. State, 1941, 191 Miss. 780, 4 So. (2d) 270; Pilgrim v. Neshoba County, 1949, 206 Miss. 703, 40 So. (2d) 598. Under Mississippi Constitution of 1869, Article 8, Sec. 6, there was no prohibition upon the alienation by the State of these sixteenth section lands.

In the absence of a state constitutional prohibition, such as was adopted in the 1890 Constitution and as now exists, this Court has held that the Legislature had authority to execute the trust for school purposes in its discretion. ██ ██ This is relevant here because the deed in issue was executed in 1873. At that time the method of the execution of the trust was for the decision of the Legislature. Illustrative of the scope of that power is Jones v. Madison County, supra, in which the Court, interpreting the 1850 Mississippi Leasing Act, upheld a state statute authorizing a lease of school lands without the consent of the inhabitants of the township. The power of the State to authorize sale of such lands prior to the 1890 Constitution was recognized in Foster v. Jefferson County, 1947, 202 Miss. 629, 32 So. (2d) 126, 568, and this seems to be the universal rule in other states also. 50 C. J., Public Lands, Secs. 179, 182-237. For general discussions of these school lands and funds,

see Smith v. McCullen, 1943, 195 Miss. 34, 13 So. 2d 319; City of Corinth v. Robertson, 1921, 125 Miss. 31, 87 So. 464; Vol. 2, Rowland, Mississippi (1907), p. 669; Vol. 1, ibid., p. 408; Kimbrough, Law of Waste in Mississippi Territory and State, 7 Miss. L. J. 234, 249 (1935); Percy H. Easom, Public School Legislation in Mississippi, 1860 to 1930 (1937), pp. 390-407, Unpublished Thesis, Mississippi State Law Library, Jackson, Miss.; U. S. v. State of Wyoming, 1947, 331 U. S. 440, 67 S. Ct. 1319, 91 L. Ed. 1590 (later legislation and developments as to school lands); U. S. v. Morrison, 1916, 240 U. S. 192, 36 S. Ct. 326, 60 L. Ed. 599; for final word on these lands, see Public Law 754, 80th Congress, 2nd Session, June 24, 1948, 62 Stat. 596, 1948 U. S. Code Congressional Service, p. 610 (ratification of treaty with Choctaw and Chickasaw Nations).

In 1870 the Mississippi Legislature adopted a comprehensive statute dealing with the sale and lease of sixteenth section lands. Miss. Laws 1870, Ch. 1, p. 1, enacted July 4, 1870. These statutes were reenacted on May 12, 1871, and appeared as Secs. 2015-2021 of the Mississippi Code of 1871. Secs. 2015-2019 provided in part as follows:

"Sec. 2015. The school directors of each district are hereby authorized to ascertain the will of the qualified electors of any township in the county, to which may belong any lands heretofore granted, and especially reserved and appropriated for the use of the schools in each township, as to whether or not such lands shall be sold; and to this end, they may order an election, to be held in the township, and they shall give at least thirty days' notice of such election, stating the object of the election, and the time and place of holding the same; said notice shall be posted in at least five of the most public places in the township. Said election shall be held in the usual manner of holding elections; which election shall be held, and the votes received by three commissioners, appointed by the county board of school

directors; upon each ballot shall be written or printed the words 'for sale', or 'against sale'; and if a majority of the votes cast shall be 'for sale' the commissioners shall forthwith report the vote thus taken to the board of directors; and said lands shall be sold by the school directors, at public auction, at the county court house door, or by an acutioneer employed by them, at their expense, to the highest bidder in quantities of not more than eighty acres.

"Sec. 2016. It shall be the duty of the board of school directors, to notify the county board of supervisors of such order of sale of said land; and said board of supervisors shall thereupon appoint three intelligent freeholders of the township, to which such lands belong, who are in no way interested in the sale of said lands, as a board of appraisers; and the board thus appointed shall take an oath, or affidavit, to faithfully perform the duties of their office; and said board of appraisers shall submit a report to the board of supervisors, and to the board of school directors, of their appraisement of said school lands.

"Sec. 2017. The board of school directors shall, before making such sale, cause public notice to be given, for at least six weeks before the time fixed for such sale of the time, place and terms of making the sale, which said notice shall be by publication, in not less than one newspaper published in the county; . . .

"Sec. 2018. In no case shall the lands be sold for less than the minimum sum fixed by the board of appraisers, and upon the following terms, to-wit: cash payment in full at the time of the sale, or a credit of five years; and in all cases of sales made upon credit, ten per cent. of the gross amount shall be paid in cash, and the balance in four annual installments, the interest upon which shall be paid annually, at the rate of ten per cent. per annum. The notes shall be made payable to the county board of school directors, secured by special mortgage on the lands sold, and by personal security *in solido,* until final

payment of principal and interest. In case any purchaser or purchasers, shall neglect or refuse to pay any of the installments or interest at maturity the mortgage shall be foreclosed, and the school directors shall sell the land, as herein provided.

"Sec. 2019. The school directors are hereby authorized and required to execute all conveyances, on behalf of the township, for any lands sold as herein provided, and to receive cash payments and notes given for the payment of such land."

These statutes remained in effect until March 5, 1878, when they were repealed by Miss. Laws 1878, Chap. 14, Sec. 64, p. 114. After the aforesaid Act of 1878, there was no express authority to sell sixteenth section lands, but this power to sell and convey such lands existed from 1871 to 1878 under the aforesaid statutes. Foster v. Jefferson County, 1947, 202 Miss. 629, 32 So. (2d) 126, 568. The present Mississippi Constitution of 1890, Sec. 211, provides that "Sixteenth Section lands reserved for the support of township schools shall not be sold . . ."

The sixteenth section school lands, which are involved in this case, were sold on January 6, 1873, under the provisions of the Code of 1871. The deed, excluding the acknowledgment, provided as follows: "This official Deed of Conveyance made this the 6th day of January A D 1873, from C. C. Eivers President & J. D. Boozer, A. A. Sheppard, E. O. Cowart, H. H. Smith & A. Hartzog, members of the Board of School Directors of the County of Lawrence & State of Mississippi, to Mary Ann Muse of County and State aforesaid Witnesseth, That Whereas in pursuance of the Statute in such cases made & provided an Election was on the 28th day of September A D 1871 held in Township Six, North, of Range Ten East, in said County & State, to ascertain the will of the qualified voters of said Township as to selling the 16th Section of Land in said Township, appropriated to school purposes & the said Election resulting in a majority vote *for sale*: & whereas the said Board of School Directors

appointed appraisers to value said 16th. Section & whereas the time place and terms of sale of said 16th Section were published six weeks as the law directs in the Monticello Advocate a public Newspaper published in said Lawrence County and whereas on the 1st. day of July A D 1872, said 16th. section was at the Court house door in the Town of Monticello by Subdivisions as the Law directs exposed to sale at public auction to the highest bidder on the following terms viz: Ten per Centum of the gross amount cash, and the balance in four annual installments, at said sale said Mary Ann Muse became the purchaser for the sum of $160.00 Dollars Now therefore the said President & Board of School Directors, do hereby alien convey and secure to the said Mary Ann Muse the land purchased viz: 16th. Sec. in T 6, N. R 10, E. to have & to hold the same with the appurtenances to the said Mary Ann Muse & her heirs forever & the said President & members of said Board hereto set hand and seal this 6th. day of Jan 1873.

> "C C Eivers Pres. (Seal)
> "A Hartzog (Seal)
> "A A Sheppard (Seal)
> "E O Cowart (Seal)
> "H H Smith (Seal)"

Through several mesne conveyances, four quitclaim and five warranty deeds, appellant, J. E. Lambert, became vested with the rights conveyed by the 1873 deed in the southwest quarter of Section 16. Burns claims under an oil and gas lease and mineral deed from Lambert.

No evidence indicates who, if anyone, was in possession of the land from the conveyance of 1873 to Muse until a deed in 1886 to Elisha Lambert, father of appellant, J. E. Lambert. Almost immediately after that, Elisha Lambert moved upon the southwest quarter and erected a "double split log house" on the property. Subsequently Elisha built at least three other tenant houses on the

southwest quarter. He fenced and cultivated the land, and continued to live on it until his death in 1920. Elisha sold $900.00 worth of timber off of it in about 1907. After Elisha's death his wife lived with her son, appellant, until her death in 1935. J. E. Lambert was born in 1893 on this southwest quarter farm, and has lived there all of his life. He also has cultivated about sixty acres of the one hundred and sixty acre tract, and most of the remainder is pasture or cut-over timber land. He also has cut and sold timber on it, and farmed and fenced it. He and his father, Elisha, at least since 1886, sixty-five years, have used, operated, and claimed the southwest quarter as their property. The chancellor found as a fact that Lambert and his predecessors in title "have had the actual occupancy of the land in question from on or about February 10, 1880, to the date of this suit, under recorded deeds in fee simple", with the exception of the deed of December 15, 1924, hereinafter discussed, and that they had continuously used the land "for every purpose it was susceptible of being used for, such use and occupancy being peaceable and undisputed . . .", subject to certain acts of the County hereinafter set forth.

Sec. 6596 of the Miss. Code of 1942, in the chapter on "Schools", which was first passed in 1892, provides: "Adverse possession for a period of twenty-five years, under a claim of right or title, shall be prima facie evidence in such case that the law authorizing the disposition of the lands has been complied with and the lease or sale duly made. If the claim be under a lease, the time at which the lease expires shall be fixed by the court."

. Appellees say: (1) the presumption created by Sec. 6596 is removed by evidence showing that in fact the law authorizing the sale of the land was not complied with in several particulars, and that the deed was void; and (2) the presumption of Sec. 6596 does not apply here anyway, because appellant, Lambert, and his predecessors in title have not been in the uninterrupted, con-

tinuous possession of the lands for the period required by the statute, but that in fact the County has by its actions interrupted and prevented any such possessory period from running against it.

The chancellor based his decree for appellees upon the first point. He found that J. E. Lambert and his predecessors had been in complete possession of the land claiming it as their own since about February 10, 1880, and that the board of school directors were attempting to make a sale of the lands under the 1871 statute, but that the evidence was "sufficient to overthrow any prima facie presumption that the law was complied with in regard to such sale . . ." This presumption would have existed under Sec. 6596, in the absence of the affirmative showing made by appellees but there must be a strict compliance with the 1871 law authorizing the sale of school lands, he stated, and that did not exist here, because the evidence showed that the land was sold in tracts exceeding eighty acres, and the grantee had not paid the County the purchase price. The trial court did not think that the State should be barred by laches or estoppel to contest appellants' title. The "Board of Supervisors acted each time it became their duty so to do . . . and no facts here appear which would make it unjust for the State's claim to prevail . . ." Accordingly the chancery court dismissed appellants' bill with prejudice, and under appellees' cross bill cancelled the lease and mineral deed of appellant Burns, and all claims of appellants to the minerals, and adjudicated that the State, as trustee for the township schools, is the owner of the minerals under the lands, subject to the lease owned by Humble Oil & Refining Company.

Appellees assert that the presumption created by Code Sec. 6596 is removed by evidence showing that in fact the law authorizing the sale of the land was not complied with in several particulars, and that therefore the presumption is inoperative, and this evidence shows the deed of 1873 to be void. Appellees attack this deed on

six grounds. First, they say that the sale statute contemplated prompt action after an election authorizing the sale, and that here the election was held in 1871, the sale in July, 1872, but the deed was not executed until January, 1873. ■ ■ The statute, however, placed no specific time limit upon when the sale must be made after the election, and we would not be justified in saying that the time consumed in making the sale and executing the deed after the election authorizing those acts is so unreasonable as to invalidate the entire transaction. The same comment applies with reference to appellees' argument concerning any delay in the payment of the original cash consideration for the deed. ■ ■ The Board's minutes of March, 1880, reflect that the down payment was paid by ''cash at the time of said sale''.

■ ■ The deed states that appraisers of the property prior to the sale were appointed by the Board of School Directors. The statute requires that they be appointed by the County Board of Supervisors. However, the minutes of the Board of Supervisors reflect that they appointed the appraisers, and their report was approved by that Board. The chancellor found this as a fact. The statute does not prohibit the Board of School Directors also appointing appraisers, but it requires the minimum price to be based upon the price fixed by appraisers appointed by the Board of Supervisors. Since that appears affirmatively to have been done, the recital in the deed is at least surplusage and not a serious defect. Appellees say that the deed is invalid because no special mortgage was executed to secure the purchase money note, as required by the statute, Miss. Code 1871, Sec. 2018. ■ ■ However, they concede that later minutes of the Board of Supervisors indicate that a mortgage was in fact given by Muse. No affirmative showing is made that it was not given, and Sec. 6596 is designed to apply to this situation in the absence of ''affirmative evidence'' to the contrary. Certainly these four foregoing pro-

cedural requirements of the statute are not shown by "affirmative evidence" of appellees to be lacking.

The chancellor based his decree upon evidence concerning two alleged procedural deficiencies. The deed provided for payment by Muse of the four remaining annual installments of the purchase price, but in 1880 the minutes of the Board of Supervisors reflect that Muse had not paid any of those installments. They show that in 1880 the Board accepted the assumption of the indebtedness under the original deed by Jones and Elisha Lambert, subsequent grantees of Muse, and their promissory note. However, there is no evidence that after that time the balance of the purchase price was not paid, and we think Sec. 6596 was designed to supply a presumption that it was paid. Moreover, in the absence of a foreclosure of the mortgage or of the vendor's lien, the deed would be effective. This Court has held that adverse possession in excess of twenty-five years subsequent to 1892, which was the year in which the present Sec. 6596 was first passed, suffices to supply a presumption of payment of the purchase price. The principle of these cases is applicable here. Warren County v. Lamkin, 1908, 93 Miss. 123, 46 So. 497, 22 L. R. A., N. S., 920; Brown v. Board of Sup'rs of Issaquena County, 1876, 54 Miss. 230; Madison County v. Powell, 1893, 71 Miss. 618, 15 So. 109; Bruce v. Jones, 1918, 117 Miss. 207, 78 So. 9; Foster v. Jefferson County, 1947, 202 Miss. 629, 32 So. (2d) 126, 568; Rosenbaum v. Bohannon, 1948, 204 Miss. 9, 36 So. (2d) 798.

Appellees say that the deed on its face was affirmative evidence that the Board sold an entire section of six hundred and forty acres, and, therefore, the deed was in violation of Sec. 2015, Miss. Code 1871, which provided that it should be sold "in quantities of not more than eighty acres". The deed recites that "Whereas on the 1st day of July, A. D., 1872, said 16th section was at the court house door in the Town of Monticello *by subdivisions as the law directs* exposed to sale at pub-

lic auction to the highest bidder . . ." (italics added), the grantors conveyed to Muse that section. The statute did not prohibit the Board from selling the entire section to one purchaser, provided it is offered and bid on in "quantities of not more than eighty acres". The deed recites that the land was sold "by subdivisions as the law directs". This is an affirmative recital that it was offered by subdivisions of not exceeding eighty acres each, and that Muse bought all of the offered subdivisions in the section. The express recitals of the deed, together with the fact that there was no other evidence concerning the method of sale, indicate a proper transfer. Certainly there was no "affirmative evidence" to indicate the contrary, other than the mere fact that the deed conveyed the entire Section. However, this is explained by the other recitals in the deed, and is buttressed by the presumption established in Sec. 6596. It has often been held that █ there is a strong presumption of regularity in the method of sale of lands where a long period of time has expired, coupled with adverse possession of the property. Stevenson's Heirs v. McReary, 1854, 12 Smedes & M. 2, 54; Forsdick v. Tallahatchie County, 1898, 76 Miss. 622, 24 So. 962; State ex rel. Moore v. Knapp, Stout & Co., 1924, 136 Miss. 709, 101 So. 433. See also Foster v. Jefferson County, 1947, 202 Miss. 629, 638, 32 So. (2d) 126, 129.

On none of the six foregoing alleged procedural defects in the 1873 deed is there sufficient "affirmative evidence" to overthrow the presumption of regularity created by Sec. 6596. Certainly such "affirmative showing" must be of a stronger and more probative nature than the evidence here, although necessarily this criterion must be adapted to the particular circumstances of each case. State v. Knapp, Stout Co., supra; Yazoo & M. V. R. R. Co. v. Bolivar County, 1926, 146 Miss. 30, 111 So. 581; Carroll County v. Estes, 1894, 72 Miss. 171, 16 So. 908; Foster v. Jefferson County, supra.

██ ██ It is further suggested by appellees that the presumption of Sec. 6596 does not apply here anyway because appellant Lambert and his predecessors in title have not been in the uninterrupted, continuous possession of the lands for more than twenty-five years. It is argued that in fact the county has by numerous actions interrupted and prevented any such possessory period from running against it. In considering appellants' argument concerning laches and estoppel of the County, the chancellor said that "the Board of Supervisors acted each time it became their duty so to do . . . and no facts here appear which would make it unjust for the State's claim to prevail".

These alleged interruptions by the Board of Lambert's possession consisted largely of ex parte actions by the Board beginning in 1893. By Miss. Code of 1892, Secs. 4144-4148, the Legislature directed the Board of Supervisors in each county to ascertain the true condition of the title of each sixteenth section, to have abstracts of title made thereon, to prosecute necessary suits to confirm the county's title, and "if any person claim any of said lands in fee-simple . . . suit shall be instituted at once, or as soon as practicable, to test the legality of such claims . . ." Sec. 4148 is now Code of 1942, Sec. 6596. Apparently acting under that statute, the Board of Supervisors had an abstract of this property made in February, 1893, which purports to show that the interest conveyed under the Muse deed was a lease expiring on January 6, 1972. In 1913, another attorney prepared for and filed with the Board of Supervisors an abstract on the present lands. This one indicated that the 1873 deed was a warranty deed and also referred to other actions of the Board herein set forth. In 1912 the Board ordered a survey to be made around the lines of this Section, and further directed its attorney to bring necessary suits for trespassing and cutting timber on the section. Appellants introduced a witness who stated that he was the chain bearer for the surveyor of the

Board of Supervisors, and that when they went out to the section to make the survey Elisha Lambert told them ''Don't you put an ax in that tree, it is mine. And don't you cut it.'' This evidence was relevant to the issue of the kind of claim made by the Lamberts, and the trial court erred in excluding it. In December, 1912, the Board passed an order authorizing the sale of the timber to Crane, but there is no proof that a deed was ever executed. Around 1907 Elisha Lambert sold $900.00 worth of timber off of the land to Russell, who testified in the case. In 1913 Board orders authorized the compromise of a chancery suit and a replevin action brought by the County for timber cut on this section, but reference is not made to this portion of the section.

These acts of the Board do not operate to interrupt the running of the adverse possessory period under Code Sec. 6596. All of them are ex parte by the Board, except the attempted survey, and the testimony reveals that Elisha Lambert objected to it, claiming the land as his own.

In McIntyre v. Harvey, 1930, 158 Miss. 16, 128 So. 572, 573, 130 So. 5, an alley was used by property owners for many years. The appellee claimed legal title and asserted that from time to time he had made ''verbal remonstrances'' with the persons using the alley, and that these protests interrupted the running of the limitation period. The Court said that ''there must be something more than a protest to interrupt the running of a claim of right followed by actual users; there must be at least an interruption of the use of the way claimed as a right by the opposing person who opposes such claim . . . there must be a physical interruption or a court proceeding or some unequivocal act of ownership which interrupts the exercise of the right claimed . . .'' This test was adopted and followed in Daniels v. Jordan, 1931, 161 Miss. 78, 134 So. 903, 904. In that case the possessor was claiming title to a tract of land by adverse possession, and the owner of the record title relied upon verbal

protests and statements made by the possessor "that he was willing to do what was right, and did not want anything except what was his own . . .", as interrupting the running of the limitation period. The Court followed the McIntyre rule and rejected this argument. See also 2 C. J. S., Adverse Possession, Sec. 140; 1 Am. Jur., Adverse Possession, Secs. 162, 177. Applying this established principle to the present facts, we think that these actions of the Lawrence County Board of Supervisors were wholly inadequate to interrupt the continuity of Lambert's adverse possession, and that they therefore do not preclude the running of the twenty-five year statute.

Among the deeds in the chain of title of appellants is one dated December 15, 1924, from Mrs. S. J. Lambert, appellant's mother, to Mrs. A. J. Lambert, his wife, in which the grantor conveyed and warranted to the grantee "my unexpired leasehold" to the E½ of the SW¼ of Section 16. At the time of its execution, the twenty-five year statute, which had begun running in 1892 at its passage, had operated for more than twenty-five years, and the parties claiming under the 1873 deed had the benefit in 1924 of that presumption of regularity. Mrs. S. J. Lambert, grantor in the 1924 deed, had acquired title to the entire southwest quarter in 1910 by a warranty deed from Elisha Lambert, and she had prior to 1924 made two other conveyances of parts of the southwest quarter by general warranty deeds to J. E. Lambert, appellant. Mrs. A. J. Lambert, grantee in the 1924 instrument, testified that she did not know that deed was so limited when she obtained it, and that she had always thought and claimed that she owned the entire fee-simple title to the lands. Moreover, when she conveyed the lands to J. E. Lambert in 1931, she did it by a general warranty deed, and all of the conveyances into Lambert are by warranty deeds. An adverse possessor may claim under a color of title of a defective or imperfect instrument, even though his grantor or a predecessor was without title or interest. 1 Am. Jur., Adverse Pos-

session, Secs. 196, 197, 202. These factors are relevant on the scope of the adverse possessory claim of appellants. Nor does the fact that some of the deeds in appellants' chain of title are quitclaims affect their assertion of title. Furthermore, appellees are in no position to question the sufficiency of this intermediate deed in the chain of title of J. E. Lambert, because they are not claiming through Mrs. S. J. Lambert, grantor in the 1924 deed, but are claiming contrary to that entire chain of title, and therefore have no standing to question the sufficiency of that instrument.

Because there is no substantial dispute as to the facts, and we are holding that the chancellor misapplied the law to the facts, the decree of the trial court is reversed and a decree is entered here for appellants. Appellees' motion to strike the certificate of the chancery clerk, dated January 26, 1951, is sustained, but that does not affect the result stated above.

Reversed and decree rendered for appellants.

PER CURIAM.

The above opinion is adopted as the opinion of the Court, and for the reasons therein indicated the cause is reversed and decree rendered for appellants.