942 So.2d 294 (2006)
RIVERLAND PLANTATION PARTNERSHIP, A Louisiana General Partnership, and Robert F. McDowell, Appellants,
v.
Anton KLINGLER, Anton Klingler, III, Hans Grundmann d/b/a Kingspoint Farms, A Mississippi Partnership, and Community Bank of Mississippi, Appellees.
No. 2005-CA-01611-COA.
Court of Appeals of Mississippi.
November 14, 2006.
*295 Mark W. Prewitt, Vicksburg, attorney for appellants.
Jay Max Kilpatrick, Jackson, attorney for appellees.
Before LEE, P.J., IRVING, and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. Kingspoint Farms, Anton Klingler, Anton Klingler, III, and Hans Grundmann (Kingspoint) filed suit against Riverland Plantation and Robert F. McDowell (Riverland) in the Chancery Court of Warren County seeking to confirm and/or quiet title to 29.785 acres of land located in Warren County, Mississippi. Riverland filed a counterclaim asserting that it had acquired title to the property through adverse possession. Finding that Riverland failed to meet the elements for adverse possession, the chancery court dismissed Riverland's claim and confirmed title to the disputed property in Kingspoint. Aggrieved by the court's decision, Riverland appeals. The sole issue Riverland presents for this Court's review is whether Riverland acquired the land in dispute by adverse possession and the chancellor's decision was contrary to the overwhelming weight of the evidence constituting manifest error. Finding no merit to this issue, we affirm the judgment of the chancery court.

FACTS
¶ 2. This appeal involves a dispute over 29.785 acres of land located on the northern boundary of Section 16, Township 16 North, Range 3 East, in Warren County, Mississippi. The northern boundary of Section 16, which was conveyed by warranty deed to Kingspoint in 1983, meets the southern boundary of Section 8, which was conveyed by warranty deed to Riverland in 1981.[1] Kingspoint, a Mississippi partnership, *296 and Riverland, a Louisiana general partnership, are both hunting camps. The disputed land is primarily used for hunting and is accessible only by a four-wheeler, or other similar modes of transportation.
¶ 3. In 1989, Kingspoint farms noticed blue timber markings on some of the trees along the northern boundary of the disputed property. Kingspoint had the property surveyed and sent a copy of the survey to Riverland. The survey showed Kingspoint to be the true owners of the disputed property.[2] Consequently, Kingspoint reblazed the property line and filed suit against Riverland in 1990 in the Circuit Court of Warren County. Kingspoint took no further action regarding the 1990 lawsuit.
¶ 4. On March 17, 2004, Kingspoint filed suit against Riverland seeking to confirm and/or quiet title in favor of Kingspoint. On November 12, 2004, Riverland filed a counterclaim asserting that it had acquired title to the property through adverse possession. Riverland further asserted that its possession of the property was open, notorious and visible, hostile, under claim of ownership, exclusive, continuous and uninterrupted for a period in excess of ten years, and peaceful.
¶ 5. During the trial, Anton Klingler, III testified that, at the time he was considering buying the property, he inspected the property with Richard Selby, whose family had owned the property for the past 100 years. According to Anton, the northernmost boundary line of the property was marked with bright yellow posts in the north and east corners of Section 16. Anton also testified that Selby did not indicate the existence of any boundary other than the boundary marked by the bright yellow posts.[3] Anton stated that he saw a few pieces of an old barbed wire fence scattered between a line of trees, but that the fence was never connected, as a true fence would be, from 1983 forward. Anton further stated that Riverland had never made any attempt to repair the fence. Anton also testified that the only markings that he saw during the inspection were the bright yellow posts; there were no posted signs on the property. Consequently, Anton testified that he did not see anything during the initial inspection indicating to him that there was a claim being made as to the status of the property line. Anton also testified that Kingspoint continuously paid the property taxes on the land in dispute.
¶ 6. Anton further testified that he did not see a posted sign on the property until after Kingspoint filed suit against Riverland *297 in 1990. When Riverland began placing posted signs on the property in 1990, Kingspoint responded by taking them down. Anton also acknowledged that three deer stands were placed on the property, but that Kingspoint was not sure who placed them there. He further testified that Kingspoint used the deer stands without an objection from anyone. According to Anton, Kingspoint also placed stands on the property, but Riverland would remove the stands and return them to Kingspoint. Kingspoint would, in turn, place the stands back where they had originally placed them.
¶ 7. Selby also testified during the trial. According to Selby, the two markings on each corner of the northern part of Section 16 had always been accepted as the boundary line between Section 16 and Section 8. He testified that the prior owner of Section 8, Tom Wright, never discussed nor had any dispute with him regarding the boundary line between their properties. Selby frequently hunted on the property throughout his ownership of it, and he testified that he never saw any posted signs on the property.
¶ 8. Herndon Wilkinson, who hunted on the disputed property from the 1960's to the 1980's, testified on behalf of Riverland. Wilkinson understood the old fence to be the boundary line. He testified that there were posted signs on the property. Although Wilkinson was never a member of any hunting club that ever owned or leased the property, he testified that two deer camps, who did not own the property, agreed that no deer stand was to be put within 100 feet of the old fence.
¶ 9. Robert McDowell, a member of Riverland, testified that he had always understood the fence to be the boundary line of the property. He stated that Kingspoint had also cut trees, but that they had never crossed the fence line when doing so. According to McDowell, Riverland continuously had posted signs and deer stands on the property. He also admitted, however, that Kingspoint had placed some posted signs and placed some deer stands on the property. Anderson Barham and Mark Huey, members of Riverland, also testified that there were posted signs on both sides of the fence in 1983. Barham, who inspected the property when Riverland acquired it, testified that he understood the old fence to be the southern boundary line of Riverland's property. Nonetheless, Barham admitted that no owner was present when he inspected the property.
¶ 10. On July 21, 2005, the chancery court entered its judgment finding that Riverland failed to meet its burden to establish title to the property by adverse possession. Consequently, the chancery court dismissed with prejudice Riverland's counterclaim for adverse possession and confirmed title to the 29.785 acres in Kingspoint.

STANDARD OF REVIEW
¶ 11. This Court has long held that the chancellor, as fact-finder, "is entitled to substantial deference when his determinations are subjected to attack on appeal and appellate review searches only for an abuse of discretion." Rogers v. Morin, 791 So.2d 815, 826(¶ 39) (Miss.2001). We review questions of law de novo. Burnett v. Burnett, 792 So.2d 1016, 1019(¶ 6) (Miss. Ct.App.2001). Thus, we will not disturb a chancellor's decision when supported by substantial credible evidence, unless the chancellor abused his discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard. In re Estate of Carter v. Shackelford, 912 So.2d 138, 143(¶ 18) (Miss.2005) (citing Williams v. Williams, 843 So.2d 720, 722(¶ 10) (Miss.2003)).

*298 ISSUE AND ANALYSIS
I. Whether Riverland acquired the land in dispute by adverse possession and the chancellor's decision was contrary to the overwhelming weight of the evidence constituting manifest error.
¶ 12. Mississippi's adverse possession statute, Mississippi Code Annotated section 15-1-13(1), provides in part the following:
Ten (10) years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title.
The Mississippi Supreme Court has developed a six-part test to determine whether possession is adverse. Blackburn v. Wong, 904 So.2d 134, 136(¶ 15) (Miss.2004) (citing Thornhill v. Caroline Hunt Trust Estate, 594 So.2d 1150, 1152-53 (Miss.1992)). In order for possession to be considered adverse, it must be: (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful. Id. The would-be adverse possessor must establish each of the six elements by clear and convincing evidence. Id. (citing Thornhill, 594 So.2d at 1153) (emphasis added).
¶ 13. Riverland addresses each of the elements of adverse possession and asserts that the chancellor committed manifest error in finding that Riverland failed to establish the elements of adverse possession. We disagree.
¶ 14. Regarding the element of exclusivity, the chancery court cited Gadd v. Stone, 459 So.2d 773, 774 (Miss.1984), which dealt with a boundary dispute concerning a barbed wire fence, for the proposition that "joint use of property is insufficient to establish adverse possession." Id. (citing Fant v. Standard Oil Co., 247 So.2d 132 (Miss.1971)). We find substantial credible evidence to support the chancery court's finding that Riverland's use of the property was not exclusive. The evidence established that both Riverland and Kingspoint used the disputed property. Specifically, Anton testified that Kingspoint placed deer stands on the property. He further testified that, without objections from anyone, Kingspoint used the three deer stands that were placed on the property. Therefore, we must affirm the chancery court's decision, as each of the elements of adverse possession must be shown by clear and convincing evidence. This issue is without merit.
¶ 15. THE JUDGMENT OF THE CHANCERY COURT OF WARREN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, AND ROBERTS, JJ., CONCUR.
NOTES
[1] On May 29, 1981, James A. Brown, Neil W. Mott, Jr., and James H. Woods conveyed to Riverland by warranty deed two parcels of land in Warren County. The first parcel included all of Section 8, Township 16 North, Range 3 East. The second parcel, which is not a subject of this case, was described as "[a]ll of Lot 13 in Section 16, Township 16 North, Range 3 East." On April 8, 1983, Richard A. Selby conveyed to Kingspoint by warranty deed three parcels of land in Warren County. The first parcel included the Northeast quarter of Section 16, Township 16 North, Range 3 East. The second parcel was described as "[t]he West one-half of Section 16, Township 16 North, Range 3 East, less and except therefrom Lot 13." The third parcel included all of Section 17, Township 16 North, Range 3 East. On March 21, 1985, Anne Allen Selby conveyed to Kingspoint by warranty deed a 160 acre tract of land, located in the Southeast quarter of Section 16, Township 16 North, Range 3 East.
[2] We recognize that this case involves Sixteenth Section land, which is reserved by the State for the support of township schools. We further recognize that, but for a period of time between 1871 and 1878, the State has had no authority to convey in fee simple title to Sixteenth Section lands. See Lambert v. State, 211 Miss. 129, 51 So.2d 201 (1951). Nonetheless, because the Sixteenth Section lands issue has not been raised by the parties or the court below, we decline to address it here.
[3] Kingspoint had the property surveyed in 1989, the survey revealed that the true boundary line was, in fact, the same as was represented by the bright yellow posts.